ATTORNEY
GENERAL

NOV 3 0 2021

EXECUTIVE

SERVED _____ RELATION _____
DATE _____ TIME _____
_____ NO. _____

WASATCH ATTORNEY SERVICES          #P100877
124 W. 1400 SO. #7
SALT LAKE CITY, UT 84115          800-970-8220

J. Tayler Fox (12092)
John V. Tipton (17334)
**DENTONS DURHAM JONES PINEGAR P.C.**
111 South Main Street, Suite 2400
PO Box 4050
Salt Lake City, UT  84110-4050
Telephone:  (801) 415-3000
tayler.fox@dentons.com
john.tipton@dentons.com

*Attorneys for Plaintiff*

| **If you do not respond to this document within applicable time limits, judgment could be entered against you as requested.** |

## IN THE FOURTH JUDICIAL DISTRICT COURT
## MILLARD COUNTY, STATE OF UTAH

| | |
|---|---|
| DARRELL SMITH,<br><br>            Plaintiff,<br><br>vs.<br><br>UTAH DEPARTMENT OF AGRICULTURE AND FOOD; SHANN FINLINSON; THANE MARSHALL; COREY CATTLE COMPANY, LLC; and MIKE COREY,<br><br>            Defendants. | **SUMMONS**<br><br>Case No. 210700043<br><br>Judge Anthony Howell<br><br>Tier 3 Discovery |

STATE OF UTAH TO DEFENDANT:       Utah Department of Agriculture and Food
c/o Office of the Attorney General
Utah State Capitol Complex
350 North State Street Suite 230
Salt Lake City, UT 84114-2320

You are hereby summoned and required to file an Answer in writing to the attached

Complaint with the Clerk of the above Court located at 765 S UT-99 Suite 6, Fillmore, UT,

84631, and to serve upon or mail to J. Tayler Fox, attorney for Plaintiff, at 111 South Main

Street, Suite 2400, PO Box 4050, Salt Lake City, Utah 84111, a copy of said Answer, **WITHIN**

**TWENTY-ONE (21) DAYS** after service of this Summons upon you.  If you fail to do so,

judgment by default will be taken against you for the relief demanded in said Complaint, which

has been filed with the Court, a copy of which is attached hereto and herewith served upon you.

DATED: November 29, 2021.

DENTONS DURHAM JONES PINEGAR P.C.

_/s/ J. Tayler Fox_
J. Tayler Fox
John V. Tipton

_Attorneys for Plaintiff_

SLC_5653261.1

Bilingual Notice to Responding Party for In-State Summons (for compliance with URCP 4)

| | |
|---|---|
| A lawsuit has been filed against you. You must respond in writing by the deadline for the court to consider your side. The written response is called an Answer. | Se ha presentado una demanda en su contra. Si desea que el juez considere su lado, deberá presentar una respuesta por escrito dentro del periodo de tiempo establecido. La respuesta por escrito es conocida como la Respuesta. |
| **Deadline!**<br>Your Answer must be filed with the court and served on the other party **within 21 days** of the date you were served with this Summons.<br><br>If you do not file and serve your Answer by the deadline, the other party can ask the court for a default judgment. A default judgment means the other party can get what they asked for, and you do not get the chance to tell your side of the story. | **¡Fecha límite para contestar!**<br>Su Respuesta debe ser presentada en el tribunal y también con la debida entrega formal a la otra parte **dentro de 21 días** a partir de la fecha en que usted recibió la entrega formal del Citatorio.<br><br>Si usted no presenta una respuesta ni hace la entrega formal dentro del plazo establecido, la otra parte podrá pedirle al juez que asiente un fallo por incumplimiento. Un fallo por incumplimiento significa que la otra parte recibe lo que pidió, y usted no tendrá la oportunidad de decir su versión de los hechos. |
| **Read the complaint/petition**<br>The Complaint or Petition has been filed with the court and explains what the other party is asking for in their lawsuit. Read it carefully. | **Lea la demanda o petición**<br>La demanda o petición fue presentada en el tribunal y ésta explica lo que la otra parte pide. Léala cuidadosamente. |
| **Answer the complaint/petition**<br>You must file your Answer in writing with the court **within 21 days** of the date you were served with this Summons. You can find an Answer form on the court's website: **utcourts.gov/ans**<br><br>Scan QR code to visit page | **Cómo responder a la demanda o petición**<br>Usted debe presentar su Respuesta por escrito en el tribunal **dentro de 21 días** a partir de la fecha en que usted recibió la entrega formal del Citatorio. Puede encontrar el formulario para la presentación de la Respuesta en la página del tribunal: **utcourts.gov/ans-span**<br><br>Para accesar esta página escanee el código QR |
| **Serve the Answer on the other party**<br>You must email, mail or hand deliver a | **Entrega formal de la respuesta a la otra parte** |

Bilingual Notice to Responding Party for In-State Summons (for compliance with URCP 4)

| | |
|---|---|
| copy of your Answer to the other party (or their attorney or licensed paralegal practitioner, if they have one) at the address shown at the top left corner of the first page of this Summons. | Usted deberá enviar por correo electrónico, correo o entregar personalmente una copia de su Respuesta a la otra parte (o a su abogado o asistente legal, si tiene) a la dirección localizada en la esquina izquierda superior de la primera hoja del citatorio. |
| **Finding help**<br>The court's Finding Legal Help web page (utcourts.gov/help) provides information about the ways you can get legal help, including the Self-Help Center, reduced-fee attorneys, limited legal help and free legal clinics.  Scan QR code to visit page | **Cómo encontrar ayuda legal**<br>Para información sobre maneras de obtener ayuda legal, vea nuestra página de Internet Cómo Encontrar Ayuda Legal. (utcourts.gov/help-span) Algunas maneras de obtener ayuda legal son por medio de una visita a un taller jurídico gratuito, o mediante el Centro de Ayuda. También hay ayuda legal a precios de descuento y consejo legal breve.  Para accesar esta página escanee el código QR |

 An Arabic version of this document is available on the court's website:
نسخة عربية من هذه الوثيقة على موقع المحكمة على الإنترنت: وجد
utcourts.gov/arabic

A Simplified Chinese version of this document is available on the court's website:
本文件的简体中文版可在法院网站上找到 :
utcourts.gov/chinese
请扫描QR码访问网页

A Vietnamese version of this document is available on the court's website:
Một bản tiếng Việt của tài liệu này có sẵn trên trang web của tòa:
utcourts.gov/viet
Xin vui lòng quét mã QR (Trả lời nhanh)để viếng trang

7015GEJ Approved January 22, 2018 /
Revised January 21, 2021

Bilingual Notice to Responding Party for
In-State Summons
(for compliance with URCP 4)

Page 2 of 2

J. Tayler Fox (12092)
John V. Tipton (17334)
**DENTONS DURHAM JONES PINEGAR P.C.**
111 South Main Street, Suite 2400
PO Box 4050
Salt Lake City, UT  84110-4050
Telephone:  (801) 415-3000
tayler.fox@dentons.com
john.tipton@dentons.com

*Attorneys for Plaintiff*

> **If you do not respond to this document within applicable time limits, judgment could be entered against you as requested.**

## IN THE FOURTH JUDICIAL DISTRICT COURT
## MILLARD COUNTY, STATE OF UTAH

| | |
|---|---|
| DARRELL SMITH,<br><br>        Plaintiff,<br><br>vs.<br><br>UTAH DEPARTMENT OF AGRICULTURE AND FOOD; SHANN FINLINSON; THANE MARSHALL; COREY CATTLE COMPANY, LLC; and MIKE COREY,<br><br>        Defendants. | **COMPLAINT AND JURY DEMAND**<br><br>Case No. 210700043<br><br>Judge Anthony Howell<br><br>Tier 3 Discovery |

Plaintiff Darrell Smith complains and alleges against Defendants Utah Department of Agriculture and Food, Shann Finlinson, Thane Marshall, Corey Cattle Company, LLC, and Mike Corey as follows:

### PARTIES AND JURISDICTION

1.     Plaintiff Darrell Smith ("Mr. Smith") is an individual residing in Utah County, Utah.

2.     Defendant Utah Department of Agriculture and Food ("UDAF") is an agency of the State of Utah, organized under Utah Code § 4-2-101, *et seq.*

3.      Defendant Shann Finlinson ("Mr. Finlinson") is an individual who is and was during all times relevant to the claims herein employed by UDAF as the full-time livestock and brand inspector for Millard County.

4.      Defendant Thane Marshall ("Mr. Marshall") is an individual who is and was during all times relevant to the claims herein employed by UDAF as the full-time supervisor brand inspector supervisor for Southern Utah.

5.      Defendant Corey Cattle Company, LLC ("Corey Cattle") is a Utah limited liability company with its principal place of business in Delta, Utah.

6.      Defendant Mike Corey ("Mr. Corey") is an individual residing in Millard County, Utah.

7.      Upon information and belief, Mr. Corey is and was during all times relevant to the claims herein an owner and member of Corey Cattle.

8.      This Court has jurisdiction over UDAF, Mr. Finlinson, and Mr. Marshall pursuant to Utah Code § 63G-7-501.

9.      This Court has jurisdiction over Corey Cattle and Mr. Corey pursuant to Utah Code § 78A-5-102.

10.      This Court is the proper venue for this action pursuant to Utah Code §§ 63G-7-502(1) and 78B-3-307(1).

11.      This is a Tier 3 discovery case inasmuch as Plaintiff seeks more than $300,000 in damages.

2

## **GENERAL ALLEGATIONS**

12.     Mr. Smith is an owner and member of Rising Sun Cattle Company, LLC ("Rising Sun"), a Utah limited liability company with its principal place of business in Payson, Utah.

13.     Rising Sun is a small cattle operation that specializes in raising and selling premium full blood and F1 Wagyu cattle.

14.     Mr. Smith has invested most of his personal assets into Rising Sun and raising Wagyu cattle.

15.     Mr. Smith and Rising Sun use a cattle brand registered in Utah as brand number 1-7701-25 LH, which is placed on each cow's left hip and resembles the following ("Smith's Brand"):



16.     Corey Cattle operates a cattle feed lot in Delta, Utah where independent ranchers can house their cattle (the "Feed Lot").

17.     Corey Cattle raises its own cattle which it also houses on the Feed Lot.

SLC_5592928.6

18.    Corey Cattle uses a cattle brand registered in Utah as brand number 1-0805-75

RR, which is placed on each cow's right rib and resembles the following ("Corey Cattle Brand"):



*Agreement with Corey Cattle*

19.    In approximately March 2013, Mr. Smith began housing cattle on the Feed Lot

that were either owned by Rising Sun or by Mr. Smith personally.

20.    This is a standard practice for cattle ranchers who have limited space available for

grazing and housing their livestock.

21.    Mr. Smith and Rising Sun would pay Corey Cattle for the costs of food and

housing the cattle in exchange for placing the cattle on the Feed Lot and having Corey Cattle

watch and care for the cattle while they grew and fattened for sale and slaughter.

22.    Additionally, Mr. Smith/Rising Sun and Corey Cattle agreed for a period that

Corey Cattle could sell their cattle so long as Corey Cattle remitted all sales proceeds after

deducting the costs of food and housing.

23.    However, Mr. Smith and Rising Sun revoked their permission for Corey Cattle to

sell their cattle after an incident in 2016 where Corey Cattle failed to remit nearly $68,000.00 of

proceeds from the sale of cattle owned by Rising Sun.

4

24.     Because of this incident, Mr. Smith expressly told Mr. Corey that neither he nor Corey Cattle were authorized to sell any cattle owned by Mr. Smith or Rising Sun without their prior consent.

25.     Mr. Smith further instructed Mr. Corey to contact him when potential sales opportunities arose for consideration.

### *Plaintiff's Cattle*

26.     Between April 2017 and January 2019, Mr. Smith transported 133 head of cattle from Salem, Utah to the Feed Lot.

27.     These 133 cattle were each marked with Smith's Brand.

28.     On or about October 15, 2018, Mr. Smith purchased 87 head of cattle from Leroy Oliver, a rancher in Pleasant View, Colorado.

29.     Leroy Oliver uses a cattle brand registered in Colorado as brand number 627050, which is placed on each cow's ear and resembles the following ("Oliver's Brand"):



30.     The 87 cattle Mr. Smith purchased were marked with Oliver's Brand.

31.     The 87 cattle were transported directly from Colorado to the Feed Lot on or about October 23, 2018.

32.     Mr. Smith instructed Mr. Corey to re-brand the 87 cattle with Smith's Brand once they arrived from Colorado.

5

33.     Mr. Corey agreed to re-brand the 87 cattle when they arrived as instructed by Mr. Smith.

34.     Upon information and belief, these 87 cattle were never re-branded with Smith's Brand and remain marked with Oliver's Brand.

35.     On or about December 12, 2018, Mr. Smith purchased 63 head of cattle from Dan Duncan, a rancher in Yellow Jacket, Colorado.

36.     Dan Duncan uses a cattle brand registered in Colorado as brand number 198450, which is placed on each cow's left rib and resembles the following ("Duncan's Brand"):



37.     The 63 cattle Mr. Smith purchased were marked with Duncan's Brand.

38.     The 63 cattle were transported directly from Colorado to the Feed Lot on or about December 12, 2018.

39.     Mr. Smith again instructed Mr. Corey to re-brand the 63 cattle with Smith's Brand when they arrived from Colorado.

40.     Mr. Corey agreed to re-brand the 63 cattle when they arrived as instructed by Mr. Smith.

41.     Upon information and belief, these 63 cattle were also never re-branded with Smith's Brand and remain marked with Duncan's Brand.

42.     In all, Mr. Smith placed 282 cattle on the Feed Lot from April 2017 to January 2019, which are the cattle at issue in this action (the "282 Cattle").

6

43. Mr. Smith never agreed to sell or otherwise transfer ownership of any of the 282 Cattle to Corey Cattle or any other third-party.

44. Mr. Smith never authorized Corey Cattle to brand any of these cattle with Corey Cattle's Brand or any brand other than Smith's Brand.

45. Mr. Smith visited the Feed Lot several times per month to monitor the health and growth of his cattle.

46. During these regular visits, Mr. Smith typically met with Mr. Corey or other employees of Corey Cattle to discuss any updates or issues regarding the cattle.

### *Wrongful Transfer of the 282 Cattle*

47. On or about June 29, 2019, Mr. Corey/Corey Cattle authorized the release and transportation of approximately 900 head of cattle from the Feed Lot, including Mr. Smith's 282 Cattle, out of the State of Utah.

48. Mr. Corey did this without Mr. Smith's knowledge or consent.

49. Utah law required Corey Cattle to have a brand inspection conducted by the UDAF before it could transport the 282 Cattle across state lines. *See* Utah Code § 4-24-303.

50. As part of the brand inspection UDAF was required to verify the ownership of the inspected cattle based on their brand registrations, which are recorded in a central database often referred to as a "brand book."

51. The brand inspection at issue was performed by Mr. Finlinson on June 29, 2019.

52. This inspection is evidenced by the Brand Inspection Certificates, attached hereto as **Exhibit A** and incorporated herein.

53.    The Brand Inspection Certificates identify the "owner" of the 282 Cattle as "Titan

Livestock" ("Titan"), a company based in Fort Collins, Colorado.

54.    However, Titan was not the owner of Mr. Smith's 282 Cattle.

55.    None of the brands on the 282 Cattle were registered to Titan.

56.    Corey Cattle was also not the owner of Mr. Smith's 282 Cattle.

57.    None of the brands on the 282 Cattle were registered to Corey Cattle.

58.    Rather, at the time of the inspection, Corey Cattle owed Titan millions of dollars

for stolen cattle and fraudulent feeding contracts. See *Titan Feeding, LLC v. Corey Cattle

Company, LLC*, U.S. District of Colorado, Case No. 1:19-cv-02541.

59.    To satisfy Corey Cattle's debts to Titan, Mr. Corey released the 900 head of

cattle, including Mr. Smith's 282 Cattle, to Titan.

60.    Mr. Corey misrepresented in the Brand Inspection Certificates that he was an

owner and/or agent of Titan with authority to transport the cattle.

61.    While conducting the brand inspection, Mr. Finlinson knew or should have

known that the 282 Cattle were not owned by or registered to Titan or Corey Cattle based on the

information available to him in the brand book.

62.    Mr. Finlinson knew or should have known that the 282 Cattle were owned by

and/or registered to Mr. Smith, Mr. Oliver, and Mr. Duncan based on the brands on each of the

cattle and the information available to Mr. Finlinson in the brand book.

63.    Mr. Finlinson knew or should have known that the Brand Inspection Certificates

were falsified because they expressly misstated that cattle with brands registered to Mr. Smith,

Mr. Oliver, and Mr. Duncan were owned by Titan.

8

64.    Mr. Finlinson never contacted Mr. Smith nor inquired whether Mr. Smith had sold or otherwise transferred any of the 282 Cattle to Corey Cattle or to Titan.

65.    Mr. Finlinson failed to stop the transportation of Mr. Smith's 282 Cattle despite the fact that their brands were not registered to Titan or Corey Cattle.

66.    Mr. Smith had no prior knowledge that any of his cattle would be removed from the Feed Lot and/or transported to Titan.

67.    Mr. Smith never authorized nor consented to the sale, transfer, or transportation of any of his cattle.

68.    Around this same time, Mr. Smith began negotiating with purchasers for the sale of the 282 Cattle, which had fattened and were ready for slaughter.

69.    Unaware that the 282 Cattle had been transported to Titan without his consent, Mr. Smith visited the Feed Lot to verify the weight and health of the cattle he was planning to sell.

70.    Mr. Corey informed Mr. Smith that Corey Cattle had sold the 282 Cattle.

71.    Mr. Corey assured Mr. Smith that he would receive the sale proceeds, less the agreed upon deductions for housing and feeding costs.

72.    In reliance on Mr. Corey's representation, Mr. Smith did not take any immediate legal action against Corey Cattle, further investigate the wrongful transfer of his 282 Cattle, or otherwise seek to recover them.

73.    It was not until the spring of 2020 when Mr. Corey informed Mr. Smith that Corey Cattle had not in fact sold the 282 Cattle, but had actually released them to Titan.

9

*Communications with Thane Marshall*

74.     On or about March 9, 2020, Mr. Smith met with Mr. Marshall in Payson, Utah, and requested information and records about the unauthorized inspection, transfer, and transportation of the 282 Cattle.

75.     Mr. Marshall later contacted Mr. Smith via telephone and represented that he had visited the Feed Lot and reviewed the records of the June 29, 2019 inspection.

76.     Mr. Marshall stated that the Brand Inspection Certificates indicated that Corey Cattle was the record owner of the 282 Cattle and that no mistakes had been made by Mr. Finlinson or UDAF during the inspection.

77.     Mr. Smith asked Mr. Marshall to provide him with copies of the Brand Inspection Certificates.

78.     Mr. Marshall refused to provide the requested records to Mr. Smith.

79.     Mr. Smith then informed Mr. Marshall that he had confirmed with Mr. Corey and other Corey Cattle employees that none of the 282 Cattle had been re-branded with Corey Cattle's Brand and that Corey Cattle could not have been the record owner at the time of the June 29, 2019 inspection.

80.     Mr. Marshall responded that he would need to take a closer look at the inspection records to better understand what happened the day of the June 29, 2019 inspection and stated that he would contact Mr. Smith when he had additional information.

81.     Mr. Smith never received any further communication from Mr. Marshall.

82.     Pursuant to Utah Code § 63G-7-401, Plaintiff filed a notice of claim letter with UDAF and the Office of the Attorney General on April 5, 2021.

SLC_5592928.6

83.     Plaintiff received no response from UDAF or the Office of the Attorney General.

84.     The 60 day waiting period to file an action against UDAF outlined in Utah Code §

63G-7-403 has now passed.

## FIRST CLAIM FOR RELIEF
### Negligence – Against UDAF

85.     Plaintiff incorporates herein all preceding allegations set forth above.

86.     Mr. Finlinson is an employee of UDAF.

87.     As the livestock inspector for Millard County, performing brand inspections and

issuing brand inspection certificates is within the scope of Mr. Finlinson's employment.

88.     On June 29, 2019, Mr. Finlinson performed a brand inspection at the Feed Lot

where he inspected approximately 900 head of cattle, which included the 282 Cattle.

89.     As outlined in Utah Code § 4-24-303, Mr. Finlinson had a duty to verify the

ownership of the inspected cattle before issuing the Brand Inspection Certificates.

90.     As outlined in Utah Code § 4-24-303(3), Mr. Finlinson had a duty to record the

cattle owner's name, together with the number, sex, breed, and brand of each cow inspected on

the Brand Inspection Certificates.

91.     As outlined in Utah Code § 4-24-303(4), Mr. Finlinson had a duty to demand

evidence of ownership of the 282 Cattle before issuing the Brand Inspection Certificates because

those cattle were marked with brands other than Titan's Brand.

92.     Mr. Finlinson breached this duty by, among other things;

    a.   issuing the Brand Inspection Certificates which failed to adequately record the

          cattle owner's name together with the number, sex, breed, and brand of each cow

          inspected;

11

b.   issuing the Brand Inspection Certificates which identified Titan as the owner of

the inspected cattle despite the fact that Mr. Finlinson observed that none of the

cattle were marked with Titan's Brand, including Plaintiff's 282 Cattle;

c.   failing to demand evidence documenting ownership of the 282 Cattle or otherwise

properly verifying the ownership of the 282 Cattle before issuing the Brand

Inspection Certificates;

d.   failing to contact Plaintiff, Mr. Oliver, or Mr. Duncan or inquire whether Plaintiff,

Mr. Oliver, or Mr. Duncan had sold or otherwise transferred any of the 282 cattle

to Corey Cattle or Titan after observing the 282 Cattle were marked with either

the Smith Brand, the Oliver Brand, or the Duncan Brand;

e.   failing to verify Mr. Corey's representation that the 282 Cattle were not being

inspected due to a change in ownership; and

f.   failing to verify Mr. Corey's representation that he was an owner and/or agent of

Titan.

93.     Mr. Marshall is an employee of UDAF.

94.     As the supervisor brand inspector for Southern Utah, supervising and overseeing

brand inspections of UDAF employees is within the scope of Mr. Marshall's employment.

95.     Mr. Marshall negligently stated that Corey Cattle was the record owner of the 282

Cattle when the Brand Inspection Certificates showed that they were branded and registered to

Plaintiff, Mr. Duncan, and Mr. Oliver.

96.     As a direct and proximate result of Mr. Finlinson's and Mr. Marshall's negligent

acts and omissions, Plaintiff has been damaged in an amount to be determined at trial, but for no

12

less than $876,586.00 through the loss of the 282 Cattle and the proceeds Plaintiff expected to receive from their sale.

97.     Accordingly, Plaintiff is entitled to judgment against UDAF for Mr. Finlinson's and Mr. Marshall's negligent acts and omissions in the amount of $876,586.00, or such greater amount as may be proven at trial.

### SECOND CLAIM FOR RELIEF
**Willful Misconduct under Utah Code § 63G-7-202(3)(c)(i) – Against Mr. Finlinson and Mr. Marshall**

98.     Plaintiff incorporates herein all preceding allegations set forth above.

99.     Mr. Finlinson is an employee of UDAF.

100.    As the livestock inspector for Millard County, performing brand inspections and issuing brand inspection certificates is within the scope of Mr. Finlinson's employment.

101.    On June 29, 2019, Mr. Finlinson performed a brand inspection at the Feed Lot where he inspected approximately 900 head of cattle, which included Plaintiff's 282 Cattle.

102.    During this inspection, Mr. Finlinson observed that the 282 Cattle were marked with either Smith's Brand, Oliver's Brand, or Duncan's Brand.

103.    As outlined in Utah Code § 4-24-303, Mr. Finlinson had a duty to verify the ownership of the inspected cattle before issuing the Brand Inspection Certificates.

104.    As outlined in Utah Code § 4-24-303(3), Mr. Finlinson had a duty to record the cattle owner's name, together with the number, sex, breed, and brand of each cow inspected on the Brand Inspection Certificates.

13

105.    As outlined in Utah Code § 4-24-303(4), Mr. Finlinson had a duty to demand evidence of ownership of the 282 Cattle before issuing the Brand Inspection Certificates because those cattle were marked with brands other than Titan's Brand.

106.    Mr. Finlinson willfully and knowingly issued the Brand Inspection Certificates which failed to adequately record the cattle owner's name together with the number, sex, breed, and brand of each cow inspected.

107.    Mr. Finlinson willfully and knowingly issued the Brand Inspection Certificates which identified Titan as the owner of the inspected cattle despite the fact that Mr. Finlinson did not observe any cattle marked with Titan's Brand.

108.    Mr. Finlinson willfully and knowingly failed to demand evidence documenting ownership of the 282 Cattle or otherwise properly verify the ownership of the 282 Cattle before issuing the Brand Inspection Certificates.

109.    Mr. Finlinson willfully and knowingly failed to contact Plaintiff, Mr. Oliver, or Mr. Duncan or inquire whether Plaintiff, Mr. Oliver, or Mr. Duncan had sold or otherwise transferred any of the 282 cattle to Corey Cattle or Titan after observing the 282 Cattle were marked with either the Smith Brand, the Oliver Brand, or the Duncan Brand.

110.    Mr. Finlinson willfully and knowingly failed to verify Mr. Corey's representation that the 282 Cattle were not being inspected due to a change in ownership.

111.    Mr. Finlinson willfully and knowingly failed to verify Mr. Corey's representation that he was an owner and/or agent of Titan.

112.    Mr. Marshall is an employee of UDAF.

14

113.    As the supervisor brand inspector for Southern Utah, supervising and overseeing brand inspections of UDAF employees is within the scope of Mr. Marshall's employment.

114.    Mr. Marshall willfully and knowingly stated that Corey Cattle was the record owner of the 282 Cattle when the Brand Inspection Certificates showed that they were branded and registered to Plaintiff, Mr. Duncan, and Mr. Oliver.

115.    As a direct and proximate result of Mr. Finlinson's and Mr. Marshall's willful misconduct, Plaintiff has been damaged in an amount to be determined at trial, but for no less than $876,586.00 through the loss of the 282 Cattle and the proceeds Plaintiff expected to receive from their sale.

116.    Accordingly, Plaintiff is entitled to judgment against Mr. Finlinson and Mr. Marshall for their willful misconduct in the amount of $876,586.00, or such greater amount as may be proven at trial.

### THIRD CLAIM FOR RELIEF
**Breach of Contract – Against Corey Cattle**

117.    Plaintiff incorporates herein all preceding allegations set forth above.

118.    Plaintiff and Corey Cattle entered into an enforceable agreement whereby Plaintiff placed approximately 282 head of cattle on the Feed Lot.

119.    Plaintiff performed all of his material obligations under the agreement.

120.    Corey Cattle breached the agreement by, among other things:

    a.   failing to re-brand the 87 cattle Plaintiff purchased from Leroy Oliver when they were delivered to the Feed Lot;

    b.   failing to re-brand the 63 cattle Plaintiff purchased from Dan Duncan when they were delivered to the Feed Lot;

15

    c.   procuring an inspection of the 282 Cattle in order to release them to Titan without Plaintiff's knowledge or consent;

    d.   misrepresenting to Mr. Finlinson that the 282 Cattle were owned by Corey Cattle and/or Titan;

    e.   arranging for and authorizing the transportation of the 282 Cattle to Titan without Plaintiff's knowledge or consent in order to satisfy debts Corey Cattle owed to Titan;

    f.   misrepresenting to Plaintiff that the 282 Cattle had been sold; and

    g.   misrepresenting to Plaintiff that he would receive payment for the value of the 282 Cattle in the form of the proceeds from the unauthorized sale, which Plaintiff reasonably relied on to his detriment.

121.    As a direct and proximate result of Corey Cattle's breach, Plaintiff has been damaged in an amount to be determined at trial, but for no less than $876,586.00 through the loss of the 282 Cattle and the proceeds Plaintiff expected to receive from their sale.

122.    Accordingly, Plaintiff is entitled to judgment against Corey Cattle in the amount of $876,586.00, or such greater amount as may be proven at trial.

**FOURTH CLAIM FOR RELIEF**
**Promissory Estoppel – Against Corey Cattle & Mr. Corey**

123.    Plaintiff incorporates herein all preceding allegations set forth above.

124.    Mr. Corey informed Plaintiff that Corey Cattle had sold the 282 Cattle without Plaintiff's knowledge, authorization, or consent.

125.    Mr. Corey promised Plaintiff that he would receive payment for the value of the 282 Cattle in the form of the proceeds from the unauthorized sale.

16

126.    Plaintiff reasonably and justifiably relied on Mr. Corey's representation that he would receive payment for the value of the 282 Cattle and fully expected to receive such payment from Corey Cattle.

127.    Plaintiff, reasonably and justifiably relying on these representations and acting reasonably and in ignorance of the falsity of these representations, was thereby induced to not take any immediate legal action against Corey Cattle, further investigate the disposition of the 282 Cattle, or otherwise seek to recover the 282 Cattle.

128.    As a direct and proximate result of Mr. Corey and Corey Cattle's fraudulent misrepresentation, Plaintiff has been damaged in an amount to be determined at trial, but for no less than $876,586.00 through the loss of the 282 Cattle and the proceeds Plaintiff expected to receive from their sale.

129.    Injustice will occur if Mr. Corey and Corey Cattle do not pay Plaintiff for the value of the 282 Cattle.

130.    Therefore, Mr. Corey and Corey Cattle should be estopped from denying Plaintiff the benefits of their promise to pay for the value of the 282 Cattle.

131.    Accordingly, Plaintiff is entitled to judgment against Mr. Corey and Corey Cattle in the amount of $876,586.00, or such greater amount as may be proven at trial.

132.    Additionally, Mr. Corey and Corey Cattle's conduct was grossly negligent, reckless, intentional, and a known violation of the law, entitling Plaintiff to an award of punitive damages against Mr. Corey and Corey Cattle under Utah Code § 78B-8-201, or as otherwise allowed under Utah law.

SLC_5592928.6

## FIFTH CLAIM FOR RELIEF
### Fraudulent Misrepresentation – Against Corey Cattle & Mr. Corey

133.    Plaintiff incorporates herein all preceding allegations set forth above.

134.    Mr. Corey informed Plaintiff that Corey Cattle had sold the 282 Cattle without Plaintiff's knowledge, authorization, or consent.

135.    Mr. Corey also promised Plaintiff that he would receive payment for the value of the 282 Cattle in the form of the proceeds from the unauthorized sale.

136.    These representations by Mr. Corey were concerning then-existing material facts regarding the disposition of the 282 Cattle which were false.

137.    At the time of this conversation, Mr. Corey knew these representations were false, or made the representations recklessly, without knowledge of their truth, and as positive assertions.

138.    Mr. Corey made these representations with the intent and for the purpose of inducing Plaintiff to not take any immediate legal action against Corey Cattle, further investigate the disposition of the 282 Cattle, or otherwise seek to recover the 282 Cattle.

139.    Plaintiff reasonably and justifiably relied on Mr. Corey's representation that he would receive payment for the value of the 282 Cattle and fully expected to receive such payment from Corey Cattle.

140.    Plaintiff, reasonably and justifiably relying on these representations and acting reasonably and in ignorance of the falsity of these representations, was thereby induced to not take any immediate legal action against Corey Cattle, further investigate the disposition of the 282 Cattle, or otherwise seek to recover the 282 Cattle.

SLC_5592928.6

141.    As a direct and proximate result of Mr. Corey and Corey Cattle's fraudulent misrepresentation, Plaintiff has been damaged in an amount to be determined at trial, but for no less than $876,586.00 through the loss of the 282 Cattle and the proceeds Plaintiff expected to receive from their sale.

142.    Accordingly, Plaintiff is entitled to judgment against Mr. Corey and Corey Cattle in the amount of $876,586.00, or such greater amount as may be proven at trial.

143.    Additionally, Mr. Corey and Corey Cattle's conduct was grossly negligent, reckless, intentional, and a known violation of the law, entitling Plaintiff to an award of punitive damages against Mr. Corey and Corey Cattle under Utah Code § 78B-8-201, or as otherwise allowed under Utah law.

### SIXTH CLAIM FOR RELIEF
#### Conversion – Against Corey Cattle & Mr. Corey

144.    Plaintiff incorporates herein all preceding allegations set forth above.

145.    Plaintiff is the rightful owner of the 282 Cattle.

146.    Corey Cattle and Mr. Corey knowingly and intentionally deprived Plaintiff of his right to possession, custody, control, and use of the 282 Cattle by authorizing the transport of the 282 Cattle without Plaintiff's consent in order to satisfy debts Corey Cattle owed to Titan.

147.    Corey Cattle and Mr. Corey's actions were willful, without legal justification, and without Plaintiff's consent, permission, or authority.

148.    Plaintiff is entitled to immediate possession, custody, control, and use of the 282 Cattle.

149.    Corey Cattle and Mr. Corey have refused to relinquish possession, custody, or control of the 282 Cattle or otherwise reimburse Plaintiff for the value of the 282 Cattle.

150.    Accordingly, Plaintiff is entitled to judgment against Corey Cattle and Mr. Corey in the amount of $876,586.00, or such greater amount as may be proven at trial.

151.    Additionally, Corey Cattle and Mr. Corey's conduct was grossly negligent, reckless, intentional, and a known violation of the law, entitling Plaintiff to an award of punitive damages against Corey Cattle and Mr. Corey under Utah Code § 78B-8-201, or as otherwise allowed under Utah law.

<u>SEVENTH CLAIM FOR RELIEF</u><br><b>Unjust Enrichment/Contract Implied at Law – Against Corey Cattle & Mr. Corey</b>

152.    Plaintiff incorporates herein all preceding allegations set forth above.

153.    This claim for relief is pled in the alternative to the Third Claim for Relief.

154.    Plaintiff conferred a substantial benefit upon Corey Cattle and Mr. Corey when Corey Cattle and Mr. Corey authorized the transfer and transportation of the 282 Cattle without Plaintiff's consent in order to satisfy debts Corey Cattle owed to Titan.

155.    Corey Cattle and Mr. Corey understood, appreciated, accepted, and retained this benefit conferred upon them by Plaintiff.

156.    Corey Cattle and Mr. Corey have been unjustly enriched through the satisfaction of certain debts Corey Cattle owed to Titan, and it would be inequitable due to their wrongful and unjust actions to allow them to retain the benefit conferred upon them by Plaintiff without payment of its value.

157.    As a direct and proximate result of Corey Cattle and Mr. Corey's unjust enrichment, Plaintiff has been damaged in an amount to be determined at trial, but for no less than $876,586.00 through the loss of the 282 Cattle and the proceeds Plaintiff expected to receive from their sale.

SLC_5592928.6

158.    Accordingly, Plaintiff is entitled to judgment against Corey Cattle and Mr. Corey in the amount of $876,586.00, or such greater amount as may be proven at trial.

159.    Additionally, Corey Cattle and Mr. Corey's conduct was grossly negligent, reckless, intentional, and a known violation of the law, entitling Plaintiff to an award of punitive damages against Corey Cattle and Mr. Corey under Utah Code § 78B-8-201, or as otherwise allowed under Utah law.

### EIGHTH CLAIM FOR RELIEF
**Contract Implied in Fact – Against Corey Cattle & Mr. Corey**

160.    Plaintiff incorporates herein all preceding allegations set forth above.

161.    This claim for relief is pled in the alternative to the Third Claim for Relief.

162.    Plaintiff placed approximately 282 head of cattle on the Feed Lot.

163.    Plaintiff expected that Corey Cattle and Mr. Corey would house the 282 cattle until Plaintiff was ready to sell the cattle for slaughter.

164.    Corey Cattle and Mr. Corey knew or should have known that Plaintiff expected them to house the 282 cattle until Plaintiff was ready to sell the cattle for slaughter.

165.    Corey Cattle and Mr. Corey failed to do so by arranging for and authorizing the transportation of the 282 cattle without Plaintiff's knowledge or consent in order to satisfy debts Corey Cattle owed to Titan.

166.    As a direct and proximate result of Corey Cattle and Mr. Corey's actions, Plaintiff has been damaged in an amount to be determined at trial, but for no less than $876,586.00 through the loss of the 282 Cattle and the proceeds Plaintiff expected to receive from their sale.

167.    Accordingly, Plaintiff is entitled to judgment against Corey Cattle and Mr. Corey in the amount of $876,586.00, or such greater amount as may be proven at trial.

21

168.    Additionally, Corey Cattle and Mr. Corey's conduct was grossly negligent, reckless, intentional, and a known violation of the law, entitling Plaintiff to an award of punitive damages against Corey Cattle and Mr. Corey under Utah Code § 78B-8-201, or as otherwise allowed under Utah law.

### NINTH CLAIM FOR RELIEF
**Unlawful Seizure in Violation of the Fourth Amendment – 42 USC § 1983**
**Against Mr. Finlinson**

169.    Plaintiff incorporates herein all preceding allegations set forth above.

170.    Under the Fourth Amendment, the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated…" US Const. Amend. IV.

171.    Mr. Finlinson, acting under color of law, violated Plaintiff's Fourth Amendment right against the unreasonable seizure of his effects when he interfered with and seized Plaintiff's property without a warrant, investigative subpoena, probable cause, reasonable suspicion, exigent circumstances or any other legal basis.

172.    Plaintiff had a property right in the items interfered with and seized by Mr. Finlinson, including the 282 Cattle.

173.    Plaintiff had a legitimate expectation of privacy in the items seized by Mr. Finlinson.

174.    Mr. Finlinson meaningfully interfered with Plaintiff's possessory interest in his property when he allowed the 282 Cattle to be wrongfully transported with no reasonable or legal basis to do so.

175.   Mr. Finlinson knew or should have known that his actions in interfering with and seizing Plaintiff's property violated Plaintiff's clearly-established constitutional rights. His conduct was objectively unreasonable, intentional, malicious, willful, and in gross and reckless disregard for these rights.

176.   Mr. Finlinson intentionally issued Brand Inspection Certificates, which allowed the wrongful transfer of the 282 Cattle.

177.   Plaintiff has suffered general, special, consequential and/or nominal damages as a result of Mr. Finlinson's actions in an amount to be determined at trial, but for no less than $876,586.00 through the loss of the 282 Cattle and the proceeds Plaintiff expected to receive from their sale.

## TENTH CLAIM FOR RELIEF
### Civil Conspiracy – 42 USC § 1983
### Against Mr. Finlinson

178.   Plaintiff incorporates herein all preceding allegations set forth above.

179.   Mr. Finlinson reached an agreement with Mr. Corey to deprive Plaintiff of his constitutional rights by seizing and interfering with Plaintiff's property without legal basis or due process of law.

180.   Specifically Mr. Finlinson and Mr. Corey agreed that Mr. Finlinson would issue Brand Inspection Certificates that would allow Mr. Corey to release the 282 Cattle to Titan and transport them across state lines, despite the fact that both parties knew the 282 cattle did not belong to Mr. Corey or Titan.

181.   Overt acts in furtherance of the agreement between Mr. Corey and Mr. Finlinson include at least the following:

23

a. procuring and issuing the Brand Inspection Certificates which failed to adequately record the cattle owner's name together with the number, sex, breed, and brand of each cow inspected;

b. procuring and issuing the Brand Inspection Certificates which identified Titan as the owner of the inspected cattle inspected despite the fact that Mr. Finlinson did not observe any cattle marked with Titan's Brand;

c. procuring and issuing the Brand Inspection Certificates despite failing to present or demand evidence documenting ownership of the 282 Cattle or otherwise properly verifying the ownership of the 282 Cattle;

d. procuring and issuing the Brand Inspection Certificates despite failing to contact Plaintiff, Mr. Oliver, or Mr. Duncan or inquire whether Plaintiff, Mr. Oliver, or Mr. Duncan had sold or otherwise transferred any of the 282 cattle to Corey Cattle or Titan after observing the 282 Cattle were marked with either the Smith Brand, the Oliver Brand, or the Duncan Brand;

e. procuring and issuing the Brand Inspection Certificates which represented that Mr. Corey was an owner and/or agent of Titan;

f. procuring and issuing the Brand Inspection Certificates which represented that the transportation of the 282 Cattle was not due to a change in ownership of the 282 Cattle.

182.   Mr. Finlinson knew or should have known that his actions in conspiring with Mr. Corey violated Plaintiff's clearly-established constitutional rights. His conduct was intentional, malicious, willful, and in gross and reckless disregard for these rights.

24

183.    Plaintiff has suffered general, special, consequential and/or nominal damages as a result of Mr. Finlinson's conspiracy to deprive Plaintiff of his constitutional rights in an amount to be determined at trial, but for no less than $876,586.00 through the loss of the 282 Cattle and the proceeds Plaintiff expected to receive from their sale.

**ELEVENTH CLAIM FOR RELIEF**
**Deprivation of Property without Substantive Due Process of Law in Violation of the Fifth and Fourteenth Amendments – 42 USC § 1983**
**Against Mr. Finlinson**

184.    Plaintiff incorporates herein all preceding allegations set forth above.

185.    Under the Fifth Amendment, no person shall be "deprived of life, liberty, or property, without due process of law." US Const. amend. XIV.

186.    Under the Fourteenth Amendment, no state shall "deprive any person of life, liberty, or property, without due process of law." US Const. amend. V.

187.    Mr. Finlinson, acting under color of law, violated Plaintiff's Fifth and Fourteenth Amendment rights when he deprived Plaintiff of his property by intentionally issuing Brand Inspection Certificates that allowed the 282 Cattle to be wrongfully released to Titan and transported across state lines with no reasonable or legal basis to do so.

188.    Mr. Finlinson's actions were arbitrary and deliberate.

189.    At all relevant times, Mr. Finlinson knew or should have known that his actions in conspiring with Mr. Corey violated Plaintiff's clearly-established constitutional rights. His conduct was intentional, malicious, willful, and in gross and reckless disregard for these rights.

190.    Plaintiff has suffered general, special, consequential and/or nominal damages as a result of Mr. Finlinson's conspiracy to deprive Plaintiff of his constitutional rights in an amount

25

to be determined at trial, but for no less than $876,586.00 through the loss of the 282 Cattle and the proceeds Plaintiff expected to receive from their sale.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

A.     On Plaintiff's First Claim for Relief, for compensatory damages against UDAF in an amount to be determined at trial, but for no less than $876,586.00;

B.     On Plaintiff's Second Claim for Relief, for compensatory damages against Mr. Finlinson in an amount to be determined at trial, but for no less than $876,586.00;

C.     On Plaintiff's Third Claim for Relief, for compensatory and consequential damages against Corey Cattle in an amount to be determined at trial, but for no less than $876,586.00, including all legal expenses, reasonable attorneys' fees and costs;

D.     On Plaintiff's Fourth Claim for Relief, for compensatory, consequential, and punitive damages against Corey Cattle and Mr. Corey in an amount to be determined at trial, but for no less than $876,586.00, including all legal expenses, reasonable attorneys' fees and costs;

E.     On Plaintiff's Fifth Claim for Relief, for compensatory, consequential, and punitive damages against Corey Cattle and Mr. Corey in an amount to be determined at trial, but for no less than $876,586.00, including all legal expenses, reasonable attorneys' fees and costs;

F.     On Plaintiff's Sixth Claim for Relief, for compensatory, consequential, and punitive damages against Corey Cattle and Mr. Corey in an amount to be determined at trial, but for no less than $876,586.00, including all legal expenses, reasonable attorneys' fees and costs;

26

G.      On Plaintiff's Seventh Claim for Relief, for compensatory, consequential, and punitive damages against Corey Cattle and Mr. Corey in an amount to be determined at trial, but for no less than $876,586.00, including all legal expenses, reasonable attorneys' fees and costs;

H.      On Plaintiff's Eighth Claim for Relief, for compensatory, consequential, and punitive damages against Corey Cattle and Mr. Corey in an amount to be determined at trial, but for no less than $876,586.00, including all legal expenses, reasonable attorneys' fees and costs;

I.      On Plaintiff's Ninth Claim for Relief, for general, special, consequential and/or nominal damages in an amount to be determined at trial, but for no less than $876,586.00, including all legal expenses, reasonable attorneys' fees and costs;

J.      On Plaintiff's Tenth Claim for Relief, for general, special, consequential and/or nominal damages in an amount to be determined at trial, but for no less than $876,586.00, including all legal expenses, reasonable attorneys' fees and costs;

K.      On Plaintiff's Eleventh Claim for Relief, for general, special, consequential and/or nominal damages in an amount to be determined at trial, but for no less than $876,586.00, including all legal expenses, reasonable attorneys' fees and costs;

L.      A judgment awarding Plaintiff his reasonable attorney fees and costs under 42 U.S.C. § 1988.

M.      For such other and additional relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Utah Rules of Civil Procedure, Plaintiff hereby demands a jury trial in this action on all issues so triable.

SLC_5592928.6

DATED: November 8, 2021.

**DENTONS DURHAM JONES PINEGAR P.C.**

*/s/ J. Tayler Fox*
J. Tayler Fox
John V. Tipton

*Attorneys for Plaintiff*

<u>Plaintiff's Address</u>:
Darrell Smith
3778 West 12600 South Street
Payson, UT 84651

28

# EXHIBIT A

UTAH DEPARTMENT OF AGRICULTURE

## LIVESTOCK BRAND INSPECTION

**87P** 24547

OWNER: Titan Livestock    ADDRESS: Ft. Collins, CO

BUYER: _____    ADDRESS: _____

SOLD TO: ☐ Wilson Creek Cattle    DESTINATION: Melba, ID

CONSIGNED TO: ☑

CARRIER: Keetch Trucking LIC. NO. AL 6491 ID    DATE: 6-29-19

| Steers | Cows | Heifers | Bulls | Horses | Brand | Location | Color or Breed | Total |
|--------|------|---------|-------|--------|-------|----------|----------------|-------|
|  |  | 78 |  |  | I FL-C | LR, LH | BIK | 78 |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  | 78 |

**LIVESTOCK INSPECTED FOR:**
- ☐ Change of Ownership
- ☑ Leaving the State
- ☐ Slaughter
- ☐ Released at no charge
- ☐ Yearly Travel Permit
- ☐ Lifetime Travel Permit
- ☐ Other (specify) _____

Owner Premises No. _____

GPS Coordinates: _____

TIME    MILEAGE

MC
Owner or Agent Signature

(Driver)

Cattle Inspection — Released From
Beef Council
Predator Control
Horse Inspection — 24560
TOTAL

Dealer's License No.
Required by Utah
State Law

BRAND INSPECTOR Shann Jenkinson

**Validation of Brand Certificates:**

All Brand Inspection certificates, except for " Change of ownership" and " travel permits" shall be automatically cancelled and void 72 hours after time of issuance.
This certificate void if altered.

PAID **BY CASH OR** CHECK

UTAH DEPARTMENT OF AGRICULTURE

## LIVESTOCK BRAND INSPECTION

**87P** :24548

OWNER: _Titan Livestock_  ADDRESS: _Ft. Collins, CO_

BUYER: _____  ADDRESS: _____

SOLD TO: ☐ _Wilson Creek Cattle_  DESTINATION: _Melba, ID_

CONSIGNED TO: ☑

CARRIER: _L & M #3_  LIC. NO. _AK 6742 ID_  DATE: _6-29-19_

| Steers | Cows | Heifers | Bulls | Horses | Brand | Location | Color or Breed | Total |
|--------|------|---------|-------|--------|-------|----------|----------------|-------|
|        |      | 78      |       |        | I L-O | LR LH    | Blk            | 78    |
|        |      |         |       |        |       |          |                |       |
|        |      |         |       |        |       |          |                |       |
|        |      |         |       |        |       |          |                |       |
|        |      |         |       |        |       |          |                |       |
|        |      |         |       |        |       |          |                |       |
|        |      |         |       |        |       |          |                |       |
|        |      |         |       |        |       |          |                | 78    |

**LIVESTOCK INSPECTED FOR:**

☐ Change of Ownership
☑ Leaving the State
☐ Slaughter
☐ Released at no charge
☐ Yearly Travel Permit
☐ Lifetime Travel Permit
☐ Other (specify) _____

Owner Premises No. _____

GPS Coordinates: _____

_MC_
Owner or Agent Signature

(Driver)

Cattle Inspection — _Released_
Beef Council — _From_
Predator Control
Horse Inspection — _24560_
TOTAL

TIME      MILEAGE

Dealer's License No.
Required by Utah
State Law

**Validation of Brand Certificates:**

All Brand Inspection certificates, except for " Change of ownership"
and " travel permits" shall be automatically cancelled and void 72
hours after time of issuance.
This certificate void if altered.

BRAND INSPECTOR _Glenn Finlinson_

PAID BY CASH OR CHECK

UTAH DEPARTMENT OF AGRICULTURE

## LIVESTOCK BRAND INSPECTION

**87P** 24550

OWNER: Titan Livestock          ADDRESS: FT. Collins, CO

BUYER: _____          ADDRESS: _____

SOLD TO: ☐ Wilson Creek Cattle   DESTINATION: Melba, ID

CONSIGNED TO: ☒

CARRIER: Mound Valley  LIC. NO. AK 29 25 ID          DATE: 6-29-19

| Steers | Cows | Heifers | Bulls | Horses | Brand | Location | Color or Breed | Total |
|--------|------|---------|-------|--------|-------|----------|----------------|-------|
|        |      | 56      |       |        | IL-O C³ | LR,LH,RR | Blk | 56 |
|        |      |         |       |        |       |          |                |       |
|        |      |         |       |        |       |          |                |       |
|        |      |         |       |        |       |          |                |       |
|        |      |         |       |        |       |          |                |       |
|        |      |         |       |        |       |          |                |       |
|        |      |         |       |        |       |          |                |       |
|        |      |         |       |        |       |          |                | 56 |

**LIVESTOCK INSPECTED FOR:**

☐ Change of Ownership
☒ Leaving the State
☐ Slaughter
☐ Released at no charge
☐ Yearly Travel Permit
☐ Lifetime Travel Permit
☐ Other (specify) _____

Owner Premises No. _____

GPS Coordinates: _____

| TIME | MILEAGE |

MC
Owner or Agent Signature

(Driver)

Cattle Inspection  Released
Beef Council      From
Predator Control
Horse Inspection  24560
TOTAL

Dealer's License No.
Required by Utah
State Law

**Validation of Brand Certificates:**

All Brand Inspection certificates, except for "Change of ownership" and "travel permits" shall be automatically cancelled and void 72 hours after time of issuance.
This certificate void if altered.

BRAND INSPECTOR Glenn Tomlinson

PAID BY CASH OR CHECK

UTAH DEPARTMENT OF AGRICULTURE

**LIVESTOCK BRAND INSPECTION**

**87P** 24552

OWNER: _Titan Livestock_    ADDRESS: _Ft. Collins, CO_

BUYER: _____    ADDRESS: _____

SOLD TO: ☐ _Wilson Creek Cattle_    DESTINATION: _Melba, ID_

CONSIGNED TO: ☑

CARRIER: _Wagner_    LIC. NO. _AK 3840 ID_    DATE: _6-29-19_

| Steers | Cows | Heifers | Bulls | Horses | Brand | Location | Color or Breed | Total |
|--------|------|---------|-------|--------|-------|----------|----------------|-------|
| 52 | | | | | DN | LR | BLK | 52 |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | 52 |

**LIVESTOCK INSPECTED FOR:**

☐ Change of Ownership
☑ Leaving the State
☐ Slaughter
☐ Released at no charge
☐ Yearly Travel Permit
☐ Lifetime Travel Permit
☐ Other (specify) _____

Owner Premises No. _____

GPS Coordinates: _____

_MC_
Owner or Agent Signature

(Driver)

Cattle Inspection _Released_
Beef Council _From_
Predator Control
Horse Inspection _24560_
TOTAL

TIME    MILEAGE

Dealer's License No.
Required by Utah
State Law

**Validation of Brand Certificates:**

All Brand Inspection certificates, except for " Change of ownership"
and " travel permits" shall be automatically cancelled and void 72
hours after time of issuance.
This certificate void if altered.

BRAND INSPECTOR _Glenn Jenkinson_

PAID BY CASH OR CHECK

UTAH DEPARTMENT OF AGRICULTURE

**LIVESTOCK BRAND INSPECTION**

**87P** :24553

OWNER: _Titan Livestock_        ADDRESS: _FT Collins. CO_

BUYER: _____        ADDRESS: _____

SOLD TO: ☐ _Wilson Creek Cattle_        DESTINATION: _Melba, ID_

CONSIGNED TO: ☑

CARRIER: _Wagner_   LIC. NO. _AL 8592 ID_        DATE: _6-29-19_

| Steers | Cows | Heifers | Bulls | Horses | Brand | Location | Color or Breed | Total |
|--------|------|---------|-------|--------|-------|----------|----------------|-------|
| 52 |  |  |  |  | D/NL-O₃ LH  ¥ | LH | BIK | 52 |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  | 52 |

**LIVESTOCK INSPECTED FOR:**

☐ Change of Ownership
☑ Leaving the State
☐ Slaughter
☐ Released at no charge
☐ Yearly Travel Permit
☐ Lifetime Travel Permit
☐ Other (specify) _____

Owner Premises No. _____

GPS Coordinates: _____

| TIME | MILEAGE |
|------|---------|

_mc_
Owner or Agent Signature

(Driver)

Cattle Inspection
Beef Council
Predator Control
Horse Inspection
TOTAL

_Released From 24560_

Dealer's License No.
Required by Utah
State Law

BRAND INSPECTOR _Dann Jenkinson_

**Validation of Brand Certificates:**

All Brand Inspection certificates, except for " Change of ownership"
and " travel permits" shall be automatically cancelled and void 72
hours after time of issuance.
This certificate void if altered.

PAID BY CASH OR CHECK

UTAH DEPARTMENT OF AGRICULTURE

**LIVESTOCK BRAND INSPECTION**

**87P** .24555

OWNER: _Titan Livestock_   ADDRESS: _FT. Collins, CO_

BUYER: _____   ADDRESS: _____

SOLD TO: ☐ _Wilson Creek Cattle_   DESTINATION: _Melba, ID_

CONSIGNED TO: ☐

CARRIER: _Estrada_   LIC. NO. _AL 2628 ID_   DATE: _6-29-19_

| Steers | Cows | Heifers | Bulls | Horses | Brand | Location | Color or Breed | Total |
|--------|------|---------|-------|--------|-------|----------|----------------|-------|
| 3239M |  |  |  |  | F̄ 3 JmLH RR | BIK | 3M32 |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  | 3M32 |

**LIVESTOCK INSPECTED FOR:**

☐ Change of Ownership
☑ Leaving the State
☐ Slaughter
☐ Released at no charge
☐ Yearly Travel Permit
☐ Lifetime Travel Permit
☐ Other (specify) _____

Owner Premises No. _____

GPS Coordinates: _____

| TIME | MILEAGE |

_____ _M_
Owner or Agent Signature

(Driver)

Cattle Inspection   _Released_
Beef Council   _From_
Predator Control
Horse Inspection   _24560_
TOTAL

**Validation of Brand Certificates:**
All Brand Inspection certificates, except for " Change of ownership"
and " travel permits" shall be automatically cancelled and void 72
hours after time of issuance.
This certificate void if altered.

Dealer's License No.
Required by Utah
State Law

BRAND INSPECTOR _Dann Tenlinson_

PAID BY CASH **OR** CHECK

UTAH DEPARTMENT OF AGRICULTURE

**( LIVESTOCK BRAND INSPECTION )**

**87P** 24558

OWNER: _Titan Livestock_   ADDRESS: _Ft. Collins, CO_

BUYER: _____   ADDRESS: _____

SOLD TO: ☐ _Wilson Creek Cattle_   DESTINATION: _Melba, ID_

CONSIGNED TO: ☑

CARRIER: _____ LIC. NO. _____   DATE: _6-29-19_

| Steers | Cows | Heifers | Bulls | Horses | Brand | Location | Color or Breed | Total |
|--------|------|---------|-------|--------|-------|----------|----------------|-------|
| 628 | | | | | IC4 OL | LR, LH, RR | BIK | 628 |
| | | 312 | | | I3 3 | LR, LH | BIK | 312 |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | 940 |

LIVESTOCK INSPECTED FOR:

☐ Change of Ownership
☑ Leaving the State
☐ Slaughter
☐ Released at no charge
☐ Yearly Travel Permit
☐ Lifetime Travel Permit
☐ Other (specify) _____

Owner Premises No. _____

GPS Coordinates: _____

| TIME | MILEAGE |
|------|---------|

_MC_
Owner or Agent Signature

(Driver)

Cattle Inspection _960⁰⁰_
Beef Council
Predator Control _235⁵⁰_
Horse Inspection
**TOTAL** _1195⁵⁰_

Dealer's License No.
Required by Utah
State Law

BRAND INSPECTOR _Diann Jenkinson_

PAID BY CASH OR CHECK

**Validation of Brand Certificates:**

All Brand Inspection certificates, except for " Change of ownership"
and " travel permits" shall be automatically cancelled and void 72
hours after time of issuance.
This certificate void if altered.

UTAH DEPARTMENT OF AGRICULTURE

**LIVESTOCK BRAND INSPECTION**

**87P** :24560

OWNER: _Titan Livestock_   ADDRESS: _FT. Collins, CO_

BUYER: _____   ADDRESS: _____

SOLD TO:  ☐ _Wilson Creek Cattle_   DESTINATION: _Melba, ID_

CONSIGNED TO: ☑

CARRIER: _____   LIC. NO. _____   DATE: _6-29-19_

| Steers | Cows | Heifers | Bulls | Horses | Brand | Location | Color or Breed | Total |
|--------|------|---------|-------|--------|-------|----------|----------------|-------|
| 583    |      |         |       |        | I 3̄   | LR, RR   | BIK            | 583   |
|        |      | 296     |       |        | I 3̄   | LR, RR   | BIK            | 296   |
|        |      |         |       |        |       |          |                |       |
|        |      |         |       |        |       |          |                |       |
|        |      |         |       |        |       |          |                |       |
|        |      |         |       |        |       |          |                |       |
|        |      |         |       |        |       |          |                |       |
|        |      |         |       |        |       |          |                | 879   |

**LIVESTOCK INSPECTED FOR:**

☐ Change of Ownership
☑ Leaving the State
☐ Slaughter
☐ Released at no charge
☐ Yearly Travel Permit
☐ Lifetime Travel Permit
☐ Other (specify) _____

Owner Premises No. _____

GPS Coordinates: _____

| TIME | MILEAGE |
|------|---------|

_____
Owner or Agent Signature

(Driver)

**Validation of Brand Certificates:**

All Brand Inspection certificates, except for "Change of ownership" and "travel permits" shall be automatically cancelled and void 72 hours after time of issuance.
This certificate void if altered.

Cattle Inspection _899⁰⁰_
Beef Council _____
Predator Control _21.97⁵_
Horse Inspection _____
TOTAL _1118⁷⁵_

BRAND INSPECTOR _Diana Funk____   1025

Dealer's License No.
Required by Utah
State Law

PAID BY CASH OR CHECK