KYLE J. KAISER (13924)
ADAM D. WENTZ (12711)
Assistant Utah Attorneys General
160 East 300 South, Sixth Floor
PO Box 140856
Salt Lake City, UT 84114-0856
Telephone: (801) 366-010
Facsimile: (801) 366-0101
E-mail: kkaiser@agutah.gov
        awentz@agutah.gov
Counsel for State Defendants

## UNITED STATES DISTRICT COURT
### DISTRICT OF UTAH, CENTRAL DIVISION
### SOUTHERN REGION

| | |
|---|---|
| DARRELL SMITH,<br><br>    Plaintiff,<br><br>v.<br><br>UTAH DEPARTMENT OF AGRICULTURE AND FOOD, SHANN FINSLINSON, THANE MARSHALL, COREY CATTLE COMPANY, LLC, and MIKE COREY,<br><br>    Defendants. | **STATE DEFENDANTS' MOTION TO DISMISS**<br><br><br>**Case No. 4:21-cv-00118-DN-PK**<br><br>**Judge David Nuffer**<br><br>**Magistrate Judge Paul Kohler** |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ 3

MOTION ..................................................................................................................... 6

MEMORANDUM OF LAW ........................................................................................... 9

   INTRODUCTION ..................................................................................................... 9

   STATEMENT OF FACTS ........................................................................................ 11

   LEGAL STANDARD.............................................................................................. 15

   LEGAL ARGUMENT.............................................................................................. 16

     1. The Governmental Immunity Act of Utah Bars Plaintiff's Negligence Claim Against UDAF (Plaintiff's First Cause of Action). ...................................... 16

     2. Plaintiff's "Willful Misconduct" Claim (Plaintiff's Second Cause of Action) should be dismissed because no such independent cause of action exists and, even if it did, Plaintiff failed to adequately plead facts indicating UDAF employees had actual knowledge their conduct would cause injury to Mr. Smith or Rising Sun. ................................................................... 24

     3. Mr. Finlinson is entitled to qualified immunity for Plaintiff's Fourth Amendment Claim (Plaintiff's Ninth Cause of Action).............................. 28

     4. Plaintiff's Conspiracy Claim (Plaintiff's Tenth Cause of Action) Fails to State a Claim Under Either State Common Law or under § 1983............. 35

     5. Plaintiff Fails to State a Substantive Due Process Claim (Plaintiff's Eleventh Cause of Action). ..................................................................... 41

CONCLUSION ........................................................................................................... 43

WORD COUNT CERTIFICATION ............................................................................. 44

# TABLE OF AUTHORITIES

Page(s)

Federal Cases

*Anderson v. Creighton,*
    483 U.S. 635 (1987) ............................................................................................ 30
*Ashcroft v. al-Kidd,*
    563 U.S. 731 (2011) ....................................................................................... 30, 31
*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ............................................................................................ 17
*Becker v. Kroll,*
    494 F.3d 904 (10th Cir. 2007) ........................................................... 32, 42, 43, 44
*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................................................ 17
*Brower v. Cnty of Inyo,*
    489 U.S. 593 (1989) ............................................................................................ 32
*Brown v. Millard Cnty.,*
    47 F. App'x 882 (10th Cir. Sept. 20, 2002) ....................................................... 34
*California v. Hodari D,*
    499 U.S. 621 (1991) ............................................................................................ 32
*Dixon v. City of Lawton,*
    Okla., 898 F.2d 1443 (10th Cir. 1990) .............................................................. 40
*Dubbs v. Head Start, Inc.,*
    336 F.3d 1194 (10th Cir. 2003) ......................................................................... 43
*Ellis ex rel. Estate of Ellis v. Ogden City,*
    589 F.3d 1099 (10th Cir. 2009) ..................................................................... 42, 43
*Frasier v. Evans,*
    992 F.3d 1003 (10th Cir. 2021) ......................................................................... 40
*Gee v. Pacheco,*
    627 F.3d 1178 (10th Cir. 2010) ......................................................................... 17
*Hall v. Witteman,*
    584 F.3d 859 (10th Cir. 2009) ...................................................................... 16, 17
*Harlow v. Fitzgerald,*
    457 U.S. 800) (1982) ........................................................................................... 30
*Herrera v. Lufkin Indus., Inc.,*
    474 F.3d 675 (10th Cir. 2007) ........................................................................... 18
*Holland v. Harrington,*
    268 F.3d 1179 (10th Cir. 2001) ......................................................................... 43
*Leverington v. City of Colo. Springs,*
    643 F.3d 719 (10th Cir. 2011) ...................................................................... 16, 17

3

*Livsey v. Salt Lake Cnty.*,
  275 F.3d 952 (10th Cir. 2001) ................................................................................ 44
*Marcus v. McCollum*,
  394 F.3d 813 (10th Cir. 2004) ................................................................................ 34
*Mitchell v. Forsyth*,
  472 U.S. 511 (1985) ................................................................................................ 30
*Mullenix v. Luna*,
  577 U.S. 7 (2015) .................................................................................................... 31
*Pearson v. Callahan*,
  555 U.S. 223 (2009) ................................................................................................ 30
*Pepper v. Village of Oak Park,*
  No. 02-C-3890, 2003 WL 22053604 (N.D. Ill. Aug. 28, 2003) ........................................ 35
*Price-Cornelison v. Brooks*,
  524 F.3d 1103 (10th Cir. 2008) .......................................................................... 34, 35
*Soldal v. Cook County, Illinois*,
  506 U.S. 56 (1992) ........................................................................................ 32, 33, 41
*Thomas v. Sheahan*,
  370 F. Supp. 2d 704 (N.D. Ill. 2005) ...................................................................... 35
*Tonkovich v. Kan. Bd. of Regents*,
  159 F.3d 504 (10th Cir. 1998) ................................................................................ 40
*Torres v. Madrid*,
  ___ U.S. ___, 141 S. Ct. 989 (2011) ...................................................................... 32
*Williams v. Berney*,
  519 F.3d 1216 (10th Cir. 2008) .......................................................................... 42, 43, 44
*Ziglar v. Abbasi*,
  ___ U.S. ___, 137 S. Ct. 1843  (2017) ...................................................................... 31

State Cases

*DeBry v. Salt Lake County*,
  835 P.2d 981 (Utah Ct. App. 1992) ...................................................................... 22, 23
*Ericson v. Salt Lake City Corp*,
  858 P.2d 995 (Utah 1993) ...................................................................................... 20
*Fid. Nat. Title Ins. Co. v. Worthington*,
  2015 UT App 19, 344 P.3d 156 .......................................................................... 36, 38
*Golding v. Ashley Central Irrigation Co.*,
  793 P.2d 897 (Utah 1990) ...................................................................................... 26
*Harvey v. Ute Indian Tribe of Uintah & Ouray*,
  *Rsrv.*, 2017 UT 75, , 416 P.3d 401 .......................................................................... 36, 37
*In re Worthen*,
  926 P.2d 853 (Utah 1996) ...................................................................................... 26

4

*Israel Pagan Est. v. Cannon*,
     746 P.2d 785 (Utah Ct. App. 1987) ........................................................................ 36, 38
*Moss v. Pete Suazo Utah Athletic Comm'n.*,
     2007 UT 99, 175 P.3d 1042 ........................................................................................ 18
*Nixon v. Salt Lake City Corp.*,
     898 P.2d 265 (Utah 1995) .......................................................................................... 20
*Peck v. State*,
     2008 UT 39, 191 P.3d 4 .............................................................................................. 16
*Pintar v. Houck*,
     2011 UT App 304, 263 P.3d 1158 .............................................................................. 37
*Pohl, Inc. of America* v. *Webelhuth*,
     2008 UT 89, 201 P.3d 944 .......................................................................................... 36
*Puttuck v. Gendron*,
     2008 UT App 362, 199 P.3d 971 ................................................................................ 36
*Salo v. Tyler*,
     2018 UT 7, 417 P.3d 581 (citing Utah Code Ann. § 63G-7-102) ............................... 26, 28
*Thayer v. Washington County Sch. Dist.*,
     2012 UT 31, 285 P.3d 1142 ........................................................................................ 19

State Statutes

Utah Code § 4-24-303(2) .................................................................................................. 19
Utah Code § 63G-7-101(3) ............................................................................................... 24
Utah Code § 63G-7-102 .................................................................................................... 17
Utah Code § 63G-7-201(4)(d) .......................................................................................... 20
Utah Code § 63G-7-201(4)(f) ........................................................................................... 22
Utah Code § 63G-7-202(3)(a) .......................................................................................... 24
Utah Code § 63G-7-202(3)(c)(i) ....................................................................................... 25
Utah Code § 63G-7-301(2)(i) ........................................................................................... 18
Utah Code §§ 4-24-303 ..................................................................................................... 13
Utah Code §§ 63G-7-201(1) ............................................................................................. 17
Utah Code §§ 63G-7-201(4)(c), (d), and (f) .................................................................... 18

Federal Rules

Federal Rule of Civil Procedure 12(b)(6) ........................................................................... 6

Other Authorities

DUCivR 7-1 .................................................................................................................... 6, 45

## MOTION

Defendants Utah Department of Agriculture and Food ("UDAF"), Shann Finlinson, and Thane Marshall (collectively "State Defendants"), through counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6) and DUCivR 7-1, move to dismiss all counts of Plaintiff's Complaint against them (the First, Second, Ninth, Tenth and Eleventh Claims for Relief) with prejudice.  The bases of the motion include:

- UDAF is immune from Plaintiff's negligence claim pursuant to the licensing, inspection, and misrepresentation exceptions of the Utah Governmental Immunity Act.

- Plaintiff's willful misconduct claim fails because such an independent cause of action does not exist and, even if it did, Plaintiff failed to adequately plead facts indicating UDAF employees had actual knowledge their conduct would cause injury to Plaintiff.

- Mr. Finlinson is not liable for a violation of the Fourth Amendment because:

- o Mr. Finlinson did not exercise physical control over the 282 cattle such that he would have "seized" them as required for a violation of the Fourth Amendment.

- o Mr. Finlinson did not "affirmatively intervene" to aid in the alleged dispossession of the 283 cattle, such that Mr. Finlinson might be liable for a Fourth Amendment violation.

- o Finally, even if Plaintiff states a claim, Mr. Finlinson is entitled to qualified immunity because Plaintiff cannot show that his asserted right was clearly established.

- Plaintiff's civil conspiracy claim should be dismissed because:

- o Complaint fails to plead sufficient facts demonstrating the necessary element of a meeting of the minds, a requirement for both common-law and § 1983 conspiracy.

- o The Complaint fails to plausibly allege an underlying constitutional violation, a requirement of a § 1983 conspiracy.

- Plaintiff's substantive due process claim fails to state a claim because Plaintiff fails to plausibly allege facts suggesting outrageous, conscience-shocking conduct, or the violation of a fundamental right.

Accordingly, and for the reasons stated in the accompanying Memorandum of Law, the Court should grand the State Defendants' Motion, and dismiss the case against them, with prejudice.

## MEMORANDUM OF LAW

### INTRODUCTION

Plaintiff tells a story that would make Louis L'Amour jealous: A rancher, deeply in debt, collecting other people's cattle that he had been caring for at a feed lot, hornswoggling government officials, and moving the cattle across state lines to repay the debt. But unlike a L'Amour novel, this saga may not have a happy ending:  Plaintiff alleges nearly $1 million in damages for his lost herd.

Five claims have been brought against those who are only a bit players in this narrative: the brand inspector, his boss, and his employer—the State of Utah. Those players did not rustle cattle.  The most that can be said, taking Plaintiff's facts as true, is that the brand inspector took the alleged cattle rustler's word for it that the cattle were his, rather than doing a thorough search of the "Brand Book", that his boss agreed with the inspection, and that the State of Utah employed them both.  But rather than being relegated to their supporting character roles, Plaintiff has sued them for negligence, willful misconduct, and violations of the U.S. Constitution, seeking to hold them liable for the losses of the disputed cattle.

That's not how this story must go.  The State (through the Utah Department of Agriculture and Food) cannot liable for the negligence claims, because the Governmental Immunity Act of Utah bars relief in these circumstances.  Plaintiff

9

has not pleaded facts to support a claim of "willful misconduct" to overcome the liability bar against the state employees, either.

As to the constitutional claims, the Mr. Finlinson (the brand inspector) is entitled to qualified immunity. Plaintiff has not pleaded facts showing that Mr. Finlinson exercised physical control over, or sufficiently "affirmatively intervened" in the alleged conversion of the cattle to constitute a "seizure" that occurred under color of law to trigger the protections of the Fourth Amendment. And even if Plaintiff could make that showing, the claim should be dismissed because Plaintiff cannot demonstrate that the right asserted was clearly established at the time, entitling Mr. Finlinson to the defense of qualified immunity.

Likewise, Plaintiff has not pleaded sufficient facts to show a conspiracy, under state or federal law, because there are insufficient facts to show a meeting of the minds or a constitutional violation.

Finally, Plaintiff has not pleaded a cause of action for violation of substantive due process, as there is no conscience-shocking conduct demonstrated.

The Court should dismiss these claims.

10

## STATEMENT OF FACTS[1]

1.      Plaintiff Darrell Smith owns Rising Sun Cattle Company, LLC (Pl.'s Compl. (doc. 1) ¶¶ 12-13.)

2.      Defendant Mike Corey owns Defendant Corey Cattle Company, LLC which operates a cattle feed lot in Delta, Utah where ranchers house their cattle. (*Id.* ¶¶ 5-7, 16.)

3.      In approximately March 2013, Plaintiff began housing cattle on the feed lot that were either owned by Rising Sun or Plaintiff personally. (*Id.* ¶ 19.)

4.      Plaintiff expressly told Mr. Corey that neither he nor Corey Cattle were authorized to sell any cattle owned by Plaintiff or Rising Sun without consent. (*Id.* ¶¶ 23–24.)

5.      Between April 2017 and January 2019, Plaintiff transported 133 head of cattle to the feed lot. (*Id.* ¶ 26.)

6.      Each of these 133 cattle were marked with Plaintiff's registered brand (Smith's Brand"). (*Id.* ¶¶ 15, 27.)

---

[1] The following facts, from Plaintiff's complaint and from documents or statutes referenced in the complaint, are admitted for purposes of this motion only.

7.      In October 2018, Plaintiff purchased an additional 87 cattle from another rancher, with a unique brand. (*Id.* ¶¶ 28-31.) Plaintiff instructed Mr. Corey to re-brand the 87 cattle with Smith's Brand, which Mr. Corey never did. (*Id.* ¶¶ 32-34.)

8.      In December 2018, Plaintiff purchased an additional 63 cattle from yet another rancher, with a unique brand (*Id.* ¶¶ 35-38.) Plaintiff again instructed Mr. Corey to re-brand the 63 cattle with Smith's Brand, which Mr. Corey also failed to do. (*Id.* ¶¶ 39-41.)

9.      In total, Plaintiff placed 282 Cattle, displaying three different brands, on the feed lot between April 2017 and January 2019 (*Id.* ¶ 42.)

10.      On or about June 29, 2019, and without Plaintiff's knowledge or consent, Mr. Corey and/or Corey Cattle authorized the release and transportation of approximately 900 head of cattle from the feed lot, including Plaintiff's 282 Cattle, to Titan Livestock, a company based in Fort Collins, Colorado. (*Id.* ¶¶ 47, 53.)

11.      Plaintiff alleges that Corey Cattle owed Titan millions of dollars for stolen cattle and fraudulent feeding contracts and that the release of the 900 cattle, including Plaintiff's 282 Cattle, to Titan was intended to satisfy these debts. (*Id.* ¶¶ 58-59.)

12

12.     Utah law required Corey Cattle to have a brand inspection conducted by the Utah Department of Agriculture and Food before it could transport the 282 Cattle across state lines, including verifying the ownership of the inspected cattle. (*Id.* ¶ 49–50; *see also* Utah Code §§ 4-24-303, -306.)

13.     The brand inspection at issue was performed by UDAF employee Shann Finlinson on June 29, 2019. (*Id.* ¶¶ 3, 51.)

14.     As the livestock inspector for Millard County, performing brand inspections and issuing brand inspection certificates is within the scope of Mr. Finlinson's employment. (*Id.* ¶ 87.)

15.     Mr. Corey "misrepresented in the Brand Inspection Certificates that he was an owner and/or agent of Titan with authority to transport the cattle." (*Id.* ¶ 60.)

16.     The Brand Inspection Certificates further misstated that the cattle with brands registered to Mr. Smith, Mr. Oliver, and Mr. Duncan were owned by Titan. (*Id.* ¶ 63.)

17.     The Brand Inspection Certificates identified the "owner" of the 282 Cattle as Titan. (*Id.* ¶ 53.)

13

18.     Plaintiff alleges that Mr. Finlinson knew or should have known that the 282 Cattle were not owned or registered to Titan or Corey Cattle. (*Id.* ¶¶ 61–62.)

19.     Plaintiff further alleges that Mr. Finlinson knew or should have known that the Brand Inspection Certificates were falsified. (*Id.* ¶ 63.)

20.     Mr. Finlinson never contacted Plaintiff to inquire whether he had sold or otherwise transferred any of the 282 Cattle to Corey Cattle or Titan, nor did he stop the transportation of the 282 Cattle. (*Id.* ¶¶ 64–65.)

21.     Following the inspection, Mr. Finlinson issued the Brand Inspection Certificates which identified Titan as the owner of the inspected cattle even though none were marked with Titan's brand, including Plaintiff's 282 Cattle. (*Id.* ¶ 92(b).)

22.     Sometime later when Plaintiff visited the Feed Lot, Mr. Corey informed him that Corey Cattle had sold the 282 Cattle and would provide Plaintiff with the net proceeds. (*Id.* ¶¶ 69–71.)

23.     It was not until the spring of 2020 that Mr. Corey informed Plaintiff that Corey Cattle had released the 282 Cattle to Titan. (*Id.* ¶ 73.)

14

24.     On or about March 9, 2020, Mr. Smith met with UDAF supervisor Thane Marshall and requested information and records about the unauthorized inspection, transfer, and transportation of the 282 Cattle. (*Id.* ¶¶ 4, 74.)

25.     As the supervisor brand inspector for Southern Utah, supervising and overseeing brand inspections of UDAF employees is within the scope of Mr. Marshall's employment. (*Id.* ¶ 94.)

26.     Plaintiff alleges that Mr. Marshall either negligently or willfully and knowingly misrepresented to Plaintiff that Mr. Marshall had reviewed the records of the inspection, that the Brand Inspection Certificates indicated that Corey Cattle was the record owner of the 282 Cattle, and that no mistakes had been made by Mr. Finlinson during the inspection. (*Id.* ¶¶ 75-80, 114.)

## LEGAL STANDARD

In reviewing a 12(b)(6) motion to dismiss, the court assumes the truth of well-pleaded facts and draws reasonable inference in a light most favorable to the plaintiff. *E.g., Leverington v. City of Colo. Springs*, 643 F.3d 719, 723 (10th Cir. 2011). But a claim survives only if "there is plausibility in the complaint." *Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir. 2009) (citations and quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

15

misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). Threadbare recitals of elements, facts "merely consistent" with liability, "labels and conclusions," or "unadorned, the-defendant-unlawfully-harmed me accusation[s]" are insufficient. *Iqbal,* 556 U.S. at 678; *Leverington,* 643 F.3d at 723 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)); *Gee v. Pacheco,* 627 F.3d 1178, 1184–85 (10th Cir. 2010).

## LEGAL ARGUMENT

Each of Plaintiff's causes of action against State Defendants fails. Plaintiff's state-law claims against UDAF and the Individual State Defendants are barred by the Governmental Immunity Act of Utah. Mr. Finlinson is entitled to qualified immunity on the federal constitutional claims under both prongs of the qualified immunity analysis.

1. **The Governmental Immunity Act of Utah Bars Plaintiff's Negligence Claim Against UDAF (Plaintiff's First Cause of Action).**

Plaintiff's negligence claim fails because UDAF retains immunity for these claims under the Governmental Immunity Act of Utah. When a governmental entity asserts immunity under the Immunity Act, Utah courts apply a three-part test to determine whether immunity applies. *Peck v. State,* 2008 UT 39, ¶ 8, 191

16

P.3d 4.[2] "The test assesses (1) whether the activity undertaken is a governmental function; (2) whether governmental immunity was waived for the particular activity; and (3) whether there is an exception to that waiver." *Id.* (internal quotation marks omitted).

In this case, the first two questions are not at issue. The Immunity Act defines "government function" as "each activity, undertaking, or operation of a governmental entity," including those "performed by a department, agency, employee, agent, or officer of a governmental entity," and also "includes a governmental entity's failure to act." Utah Code § 63G-7-102. It is undisputed that Mr. Finlinson and Mr. Marshall's responsibilities dictated by statute to inspect cattle crossing state lines and issue certificates of inspection constitute a governmental function. (Compl. ¶¶ 49, 50, 87, 94; *see also* Utah Code §§ 63G-7-201(1); 4-24-303(1), (2).)

Next, the Immunity Act waives governmental immunity "as to any injury proximately caused by a negligent act or omission of an employee committed

---

[2] "In cases involving state-law claims, a federal court applies the substantive law of the state, but applies federal procedural law." *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 683 (10th Cir. 2007).

17

within the scope of employment." Utah Code § 63G-7-301(2)(i). Plaintiff claims that his damages were "a direct and proximate result of Mr. Finlinson's and Mr. Marshall's negligent acts and omissions" committed within the scope of their employment. (Compl. ¶¶ 87, 94, 96.)

The sole question remaining is whether the UDAF has retained immunity. Here, the UDAF retains immunity under any one of three exceptions detailed in the Immunity Act (a) the licensing exception, (b) the inspection exception, and (c) the misrepresentation exception. Utah Code §§ 63G-7-201(4)(c), (d), and (f).

### 1.1.  UDAF is immune from liability under the Immunity Act's licensing exception.

UDAF is "immune from suit, and immunity is not waived, for any injury proximately caused by a negligent act or omission of an employee committed within the scope of employment, if the injury arise out of or in connection with, or results from … the issuance … or the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order, or similar authorization. …" *Id.* § 63G-7-201(4)(c). The licensing exception applies if the subject injury concerns the governmental entity's licensing authority, whether or not the governmental entity or agent failed to follow relevant regulations. *Moss v. Pete Suazo Utah Athletic Comm'n*, 2007 UT 99, ¶ 15, 175 P.3d 1042. It can be claimed

18

by a governmental entity and its agents if they have the legal authority to issue an authorization, permit, license, certificate, approval, or order, derived from a legislative or regulatory enactment. *Thayer v. Washington County Sch. Dist.*, 2012 UT 31, ¶ 18, 285 P.3d 1142.

First, Mr. Finlinson and UDAF had legislative authority to issue the Brand Inspection Certificates. "After conducting the brand inspection, the brand inspector, if satisfied that the livestock subject to inspection bears registered brands owned by the owner of the livestock, shall issue a brand inspection certificate to the owner or owner's agent." Utah Code § 4-24-303(2); *see also* (Compl. ¶¶ 49–50).

Second, the complaint clearly states that Plaintiff's injuries arise out of or in connection with or resulted from Mr. Finlinson's issuance or failure to deny the Brand Inspection Certificates following his inspection of the 282 Cattle. Specifically, the complaint alleges that the Brand Inspection Certificates expressly misstated that the cattle with brands registered to Mr. Smith, Mr. Oliver, and Mr. Duncan were owned by Titan, and that Mr. Corey misrepresented in the Brand Inspection Certificates that he was an owner and/or agent of Titan with authority to transport the cattle. (Compl. ¶¶ 60, 63.) Following the inspection, Mr. Finlinson issued the Brand Inspection Certificates identifying Titan as the owner thereby

19

allowing the 282 Cattle to be transported and released to Titan without Plaintiff's consent. (Compl. ¶¶ 65, 92(b).) As such, the licensing exception applies and UDAF retains immunity from Plaintiff's negligence claim.

### 1.2.   UDAF is immune from liability pursuant to the Immunity Act's inspection exception.

Under the Immunity Act, UDAF retains immunity from negligence claims for injuries arising out of or in connection with or resulting from a failure to inspect or by making an inadequate or negligent inspection. Utah Code § 63G-7-201(4)(d).

Under this exception to the general waiver of immunity, the immunity extends to "the conclusions and results of an inspector may have overlooked something or made a faulty judgment." *Ericson v. Salt Lake City Corp,* 858 P.2d 995, 998 (Utah 1993).  While the inspection exception does not apply to the government's inspection of its *own* premises for safety, *Nixon v. Salt Lake City Corp.,* 898 P.2d 265, 267 (Utah 1995), nor does it apply to the inspector's independent negligent acts undertaken during the inspection, *Ericson,* 858 P.2d at 998, the exception exists because "[t]he conclusions and results of the inspection are not to be second-guessed by courts and juries." *Id.*  If the entity is engaging in "regulatory activities which are engaged in for the benefit of the public generally,"

20

and if liability is derived from the conclusions or results of the inspection, then the exception applies.

The inspection exception applies in this case. Per the complaint, Plaintiff's injuries arose from the faulty *conclusion* of Mr. Finlinson's inspection—that Corey Cattle owned the 282 head—and not the result of Mr. Finlinson's negligent actions while performing the inspection.

Plaintiff alleged that Mr. Finlinson was required by statute to verify the ownership of the inspected cattle by conducting a brand inspection and issuing brand inspection certificates. (Compl. ¶¶ 49-50.)  Plaintiff further alleges that Mr. Finlinson overlooked the fact that none of the 282 Cattle were marked with Titan's brand when, after inspecting the cattle, he incorrectly concluded that they were owned or registered to Titan and issued Brand Inspection Certificates confirming the same. (Compl. ¶¶ 53, 60-65, 92(b).) It was this purportedly faulty conclusion by Mr. Finlinson's inspection that led to Plaintiff's injuries: the ultimate release of the 282 Cattle to Titan. Stated differently, the complaint alleges that it was the erroneous conclusion of Mr. Finlinson's inspection that actually caused Plaintiff's injuries, not any independent negligent acts Mr. Finlinson committed while performing his inspection. As such, the inspection exception applies and UDAF retains immunity from Plaintiff's negligence claim.

### 1.3.   UDAF retains liability under the misrepresentation exception of the GIA.

Finally, the Immunity Act provides immunity to UDAF for injuries arising out of or in connection with or resulting from "a misrepresentation by an employee whether or not the misrepresentation is negligent or intentional [.]" Utah Code § 63G-7-201(4)(f). The Utah Court of Appeals addressed this exception in *DeBry v. Salt Lake County*, 835 P.2d 981 (Utah Ct. App. 1992). There, a third-party construction company petitioned Salt Lake County for a temporary certificate of occupancy for a new building and represented to the county inspector that all necessary permits for the building had previously been obtained. *Id*. at 982-93. Relying on this information, the county inspector issued the temporary certificate of occupancy, and the plaintiff entity purchased the building. *Id*. at 983. It was later discovered that the construction company never actually obtained a building permit. *Id.*

The *DeBry* plaintiff sued both Salt Lake County and the county inspector alleging, among other things, that the County inspector, acting as agent for Salt Lake County, issued a temporary certificate of occupancy that made certain representations to the citizens of the county, that these representations were false, that the county inspector had actual knowledge that the representations were

22

false, and that the plaintiff was damaged thereby. *Id.* 988. Siding with the trial court, the appellate court concluded that "[e]ven assuming that the allegations in the [plaintiff's] complaint are true, relief could not be granted as a matter of law" because the Immunity Act "provides immunity to the county for injuries arising out of a misrepresentation by the employee whether or not it is negligent or intentional." *Id.* (internal quotations and citations omitted). Of note, the *DeBry* court also concluded that the county inspector was "likewise immune" from personal liability under the same exception to immunity waiver. *Id.*

The instant facts are strikingly similar. Plaintiff's complaint alleges that Mr. Corey misrepresented in the Brand Inspection Certificates that he was an owner and/or agent of Titan with authority to transport the cattle. (Compl. ¶ 60.) According to the bare allegations in the Complaint, Mr. Finlinson ostensibly knew or should have known that the Brand Inspection Certificates were falsified, and he failed to verify ownership of the 282 Cattle or stop their transportation across state lines. (Compl. ¶¶ 63-65, 92(b).) Plaintiff alleges that Mr. Finlinson's supervisor, Mr. Marshall, later misrepresented to Plaintiff that he had reviewed the records of the inspection, that the Brand Inspection Certificates indicated that Corey Cattle was the record owner of the 282 Cattle, and that no mistakes had been made by Mr. Finlinson during the inspection. (Compl. ¶¶ 75-80, 114.)

23

Plaintiff's complaint expressly states that his injuries were a direct and proximate result of Mr. Marshall's above misrepresentations. (Compl. ¶¶ 114, 116.) As such, and as the *DeBry* court previously opined, UDAF retains immunity as a matter of law for Mr. Marshall's alleged misrepresentations, whether they were negligent or intentional.

2. **Plaintiff's "Willful Misconduct" Claim (Plaintiff's Second Cause of Action) should be dismissed because no such independent cause of action exists and, even if it did, Plaintiff failed to adequately plead facts indicating UDAF employees had actual knowledge their conduct would cause injury to Mr. Smith or Rising Sun.**

Plaintiff also seeks to hold Mr. Finlinson—the brand inspector—and Mr. Marshal—his boss— *personally* liable for state torts.  This claim of "willful misconduct" should also be dismissed, as it is barred by the Immunity Act.

The Immunity Act extends protection not only to governmental entities, but also their employees. "A governmental entity and an employee of a governmental entity retain immunity from suit unless that immunity has been expressly waived …." Utah Code § 63G-7-101(3). And, except as otherwise provided by the Immunity Act, "an action under [the Immunity Act] against a governmental entity for an injury caused by an act or omission that occurs during the performance of an employee's duties … is a plaintiff's exclusive remedy." Utah Code § 63G-7-202(3)(a). Ordinarily then, the Immunity Act commands that a common-law tort

24

action for injuries caused by a governmental employee acting in the scope of her employment be brought only against the governmental entity, and not against the employees.

Plaintiff's characterization of Mr. Finlinson and Mr. Marshall's conduct as "willful" is a thinly veiled attempt to sidestep that immunity. *Cf.* Utah Code § 63G-7-202(3)(c)(i) (permitting a claim against a governmental employee if the employee "acted or failed to act through fraud or willful misconduct.")

The complaint alleges the same facts for both the negligence claim and the "willful misconduct" claim save the insertion of the phrase "willfully and knowingly" into various paragraphs. (*Compare* Compl. ¶¶ 98-112 with ¶¶ 85-97.) Separating the willful misconduct allegations from the negligence cause of action in this way is improper as an independent claim for willful misconduct does not exist. Plaintiff's allegations in this section of the Complaint sound in negligence and the same immunities discussed in response to the first cause of action apply. Mr. Finlinson and Mr. Marshall retain immunity under the licensing, inspection, and misrepresentation exceptions. *Id.*

But even if an independent willful misconduct cause of action exists, Plaintiff's attempt to saddle the UDAF employees with personal liability still falls short because Plaintiff failed to adequately plead facts indicating that Mr.

25

Finlinson or Mr. Marshall had actual knowledge their conduct would cause injury – an omission fatal to claims of willful misconduct.

In the tort context, willful misconduct "is not equivalent to gross negligence or reckless indifference, mental states where constructive knowledge suffices for liability." *In re Worthen*, 926 P.2d 853, 868 (Utah 1996) (citing *Golding v. Ashley Central Irrigation Co.*, 793 P.2d 897, 901 (Utah 1990)). Instead, "one needs to show that at the time the act in question was done, the defendant must have been aware that his or her conduct would probably result in injury." *Id.* (cleaned up). Constructive notice of the prospective injury, therefore, is insufficient to demonstrate willful misconduct. The Utah Supreme Court has held that willfulness is a statutory construct and "requires a showing (1) that the government actor intentionally performed a wrongful act (2) with an awareness that injury will likely result." *Salo v. Tyler*, 2018 UT 7, ¶ 41, 417 P.3d 581, 590 (citing Utah Code Ann. § 63G-7-102).

Here, Plaintiff's allegations as outlined in the complaint do little more than suggest that Mr. Finlinson and Mr. Marshall *possibly* had constructive notice that their actions could lead to injury. The complaint outlines the UDAF employees' duties relating to the proper inspection of the 282 Cattle, followed by a recitation of facts claiming that they "willfully and knowingly" failed to adequately perform

26

those duties. (Compl. ¶¶ 103-114.) Stated differently, the complaint argues that the UDAF employees "willfully and knowingly" acted with negligence without ever providing facts demonstrating that they must have been aware that their conduct would probably result in injury to Plaintiff. *Id*.

The allegations of the complaint instead suggest that the UDAF employees were not aware that issuing the subject Brand Inspection Certificates would result in injury to Mr. Smith or Rising Sun. Even acknowledging that Mr. Finlinson negligently failed to properly record information regarding cattle sex, breed, brand, and cattle owner's name on the Brand Inspection Certificates, such negligence does not equate to knowledge or awareness of probable injury to Mr. Smith or Rising Sun as a result of that negligence. In fact, the complaint admits that Mr. Corey "misrepresented in the Brand Inspection Certificates that he was an owner and/or agent of Titan with authority to transport the cattle." (Compl. ¶ 60.) The certificates themselves do, in fact, include the sex, breed, brand, and cattle owner's name, but the listed owner is "Titan Livestock" as it was misrepresented to Mr. Finlinson by Mr. Corey. (Compl. Ex. A.)

Mr. Finlinson's only mistake as plead in the complaint, then, was believing Mr. Corey's misrepresentation of ownership and intentions for the cattle. Falling for Mr. Corey's deceit may have been negligent, but it was the opposite of willful

27

as, according to Mr. Corey's false representations, Titan was the owner of the livestock and Mr. Corey was simply transporting them to a different location, not transferring ownership. (Compl. ¶ 60.) Plaintiff omits facts alleging that Mr. Finlinson had any knowledge or awareness that "injury would likely result" from issuing the subject Brand Inspection Certificates. Mr. Corey made efforts specifically intended to keep Mr. Finlinson from "knowing" his intentions to harm the true owners of the livestock. *Id*.; *see also Salo*, 2018 UT 7, ¶ 41, 417 P.3d 581, 590. Insertion of the phrase "willfully and knowingly" to Mr. Finlinson and Mr. Marshall's failure to see through Mr. Corey's misrepresentations is deficient to plead willful misconduct and such claims should be dismissed.

### 3. Mr. Finlinson is entitled to qualified immunity for Plaintiff's Fourth Amendment Claim (Plaintiff's Ninth Cause of Action).

Next, Plaintiff seeks to hold Mr. Finlinson liable for the loss of the whole heard under the Fourth Amendment to the U.S. Constitution.  Plaintiff's Ninth Claim for Relief alleges that Mr. Finlinson "interfered with and seized Plaintiff's property without a warrant, investigative subpoena, probable cause, reasonable suspicion, exigent circumstances, or any other legal basis." (Compl. ¶ 171.)  Mr. Finlinson is entitled to dismissal on the grounds of qualified immunity.

28

### 3.1.  Qualified Immunity Standard.

Qualified immunity shields government officials who perform discretionary functions from § 1983 damages suits so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818) (1982)).

Qualified immunity "is 'an immunity from suit rather than a mere defense to liability … it is effectively lost if a case is erroneously permitted to go to trial' [and was created] to ensure that 'insubstantial claims' against government officials [will] be resolved prior to discovery." *Pearson*, 555 U.S. at 231 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Anderson v. Creighton*, 483 U.S. 635, 640 n.2 (1987) (further citations and quotations omitted)).  The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (citations and quotations omitted).

Two elements exist in the qualified immunity analysis—first, whether, under the facts alleged by the plaintiff, the government officials violated a constitutional right, and second, whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct…." *Pearson*, 555 U.S. at 231).  If the plaintiff fails to satisfy any element, the court must grant the

defendant qualified immunity.

The Supreme Court has "repeatedly told courts ... not to define clearly established law at a high level of generality.  The dispositive question is whether the violative nature of *particular* conduct is clearly established.  This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna, 577 U.S. 7, 11 (2015)* (citations and quotations omitted) (ellipsis and emphasis in original).

Thus, if "at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates the right," the official is not qualifiedly immune.  *al-Kidd, 563 U.S. at 741*.  But if an official "might not have known for certain" that the conduct was unlawful, then he is entitled to immunity *Ziglar v. Abbasi, ___ U.S. ___, 137 S. Ct. 1843, 1867  (2017)*.

Mr. Finlinson is entitled to qualified immunity under either prong.

### 3.2.    Plaintiff has failed to state a Fourth Amendment claim because Mr. Finlinson never seized Plaintiff's cattle.

First, Mr. Finlinson is entitled to dismissal because Plaintiff has not stated a plausible claim that Mr. Finlinson *seized* Plaintiff's cattle to invoke the protections of the Fourth Amendment.  "A seizure requires the use of force with intent to

30

restrain." *Torres v. Madrid,* ___ U.S. ___, 141 S. Ct. 989, 998 (2011). "From the founding to the present, the word 'seizure' has meant 'taking possession." *California v. Hodari D,* 499 U.S. 621, 624 (1991) (citations and quotations omitted." "Violation of the Fourth Amendment requires an *intentional* acquisition of physical control." *Brower v. Cnty of Inyo,* 489 U.S. 593, 596 (1989), *quoted in Becker v. Kroll,* 494 F.3d 904, 914 (10th Cir. 2007). (emphasis added).  As a result, no "seizure" exists unless an individual, acting under color of law, intentionally acquired physical control over person or property.

Plaintiff's complaint never alleges that Mr. Finlinson intentionally acquired physical control over the 282 cattle. The closest Plaintiff comes is an allegation that Mr. Finlinson "failed to stop the transportation" of the 282 cattle. (Compl. ¶ 65.)  The failure to stop the movement of persons or property is the opposite of a seizure, and Mr. Finlinson's brand inspection (even if faulty) does not violate the Fourth Amendment. *Torres,* 141 S. Ct. at 998.

> ### 3.3. Plaintiff's Fourth Amendment Claim Fails to State a Claim because Mr. Finlinson did not affirmatively intervene in Corey's seizure of the cattle.

In attempting to state a Fourth Amendment claim, Plaintiff may be implicitly invoking the Supreme Court's decision in *Soldal v. Cook County, Illinois,* 506 U.S. 56 (1992).  In that case, a trailer park landlord sought to forcibly remove

31

a trailer for nonpayment of rent, in violation of state law and two weeks before an eviction hearing was scheduled. *Id.* at 58. They notified the sheriff's office. While the landlords physically disconnected the trailer, the sheriffs stood by to ensure that the homeowner "didn't interfere" with the work. *Id.* They also refused to accept a complaint from the homeowner for criminal trespass, telling the homeowner that "they were going to go ahead and continue to move out the trailer," *id.* at 58–59, even though the officers knew that the action violated state law. The trailer was moved, the eviction ruled unlawful, and the homeowners sued for damage done, alleging a conspiracy and violation of their Fourth Amendments rights under § 1983. *Id.* at 59.

The court of appeals accepted there was sufficient evidence of state action but concluded that since there was no privacy interest at issue, no Fourth Amendment violation occurred. The Supreme Court reversed, recognizing that the Fourth Amendment protects against unlawful seizures, regardless of the privacy interests at stake. *Id.* at 59–61. It concluded that "[a]s a result of the state action in this case, the [trailer] was not only seized, it literally was carried away, giving new meaning to the term 'mobile home.'" *Id.* at 61.

Courts have subsequently interpreted *Soldal* to mean that when officers "affirmatively intervene to aid the reposessor," contrary to law, they may be liable

32

under the Fourth Amendment for the resulting seizure. *Marcus v. McCollum, 394 F.3d 813, 818–19 (10th Cir. 2004)*.  If an officer accompanies the private party to the scene, told the debtor that the seizure was legal, ordered the debtor to stop interfering with the process or face jail, stood in close proximity to the creditor, or unreasonably recognized the documentation of one party over the other, then the officer is more likely to have "actually aided in a private party's seizure". *Price-Cornelison v. Brooks, 524 F.3d 1103, 1117 (10th Cir. 2008)*. But merely "announcing circumstances under which [a government official] will not interfere with a private disposition of property" is insufficient; "[r]ather, the state must have *compelled* the unlawful seizure." *Brown v. Millard Cnty., 47 F. App'x 882, 889 (10th Cir. Sept. 20, 2002)* (unpublished).

This case is not like *Soldal.* This is not the case of a party exercising self-help to recover property with the presence of law enforcement and the putative property owner. The "seizure," if one happened—happened long ago when Corey claimed took Plaintiff's cattle and claimed them as his own.  If the government agent is not present during the private party's seizure, then he cannot be liable. *See Brown, 47 F. App'x at 889.*

Likewise, Plaintiff was not present at the inspection, and Mr. Finlinson did not take any affirmative action directly at Plaintiff to prevent him from protecting

33

his property. *Price-Cornelison*, 524 F.3d at 1117.

Additionally, Plaintiff does not allege any facts showing that Finlinson knew that Corey's activity was unlawful. Rather, he alleges that Finlinson did not consult the "Brand Book" and essentially took Plaintiff's word about the ownership of the cattle.  This is a strike against finding state action.  *See, e.g., Pepper v. Village of Oak Park,* No. 02-C-3890, 2003 WL 22053604, at * 5 (N.D. Ill. Aug. 28, 2003)* (unpublished).  When a private party acts unlawfully to steal an individual's property without the government's knowledge, then no Fourth Amendment violation exists. *See, e.g., Thomas v. Sheahan*, 370 F. Supp. 2d 704, 714 (N.D. Ill. 2005).

Mr. Finlinson's issuance of a certificate, as part of the brand inspection process, is significantly different from the active involvement law enforcement engaged in in *Soldal* and its progency.  Plaintiff fails to state a constitutional claim.

### 3.4.   Mr. Finlinson is entitled to qualified immunity.

Even if the Court believes that Plaintiff could state a Fourth Amendment claim, Mr. Finlinson is still entitled to dismissal because any asserted right has not been clearly established.  *Soldal* and its progeny differ from this case in a number of respects:

34

This case is *not* about an ongoing repossession of real or personal property;

Mr. Finlinson did not take any direct action against the property holder;

None of the relevant cases involve a Fourth Amendment seizure claim arising from the issuance of a permit allowing property already in the possession of another to pass across state lines.

In short, "every reasonable official" would not know that if they performed a faulty brand inspection, misidentifying the owner of the cattle, and the person who claimed the cattle to be theirs was actually a rustler, that the brand inspector would be liable for the theft.

Qualified immunity shields Mr. Finlinson, and the constitutional claims against him should be dismissed.

### 4. Plaintiff's Conspiracy Claim (Plaintiff's Tenth Cause of Action) Fails to State a Claim Under Either State Common Law or under § 1983.

Tenth Cause of Action alleges a conspiracy. But under either § 1983 or Utah common law, Plaintiffs have failed to plead the necessary elements.

#### 4.1. Plaintiff Has Failed to Plead Sufficient Facts Demonstrating a Meeting of the Minds Necessary for a Civil Conspiracy Claim.

Under Utah law, pleading a claim for civil conspiracy requires facts alleged that establish "(1) a combination of two or more persons, (2) an object to be

35

accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof." *Pohl, Inc. of America* v. *Webelhuth*, 2008 UT 89, ¶ 29, 201 P.3d 944, 954-55. To survive a motion to dismiss, Plaintiff must plead "some kind of meeting of the minds" between the parties to "harm" the plaintiff in an unlawful manner. *Harvey v. Ute Indian Tribe of Uintah & Ouray Rsrv.*, 2017 UT 75, ¶¶ 69-70, 416 P.3d 401, 425; *see also Fid. Nat. Title Ins. Co. v. Worthington*, 2015 UT App 19, ¶ 17, 344 P.3d 156, 161 (affirming the dismissal of civil conspiracy claims under 12(b)(6) because "the complaint lacks any facts showing a meeting of the minds" and instead relies on conclusory statements); *Puttuck v. Gendron*, 2008 UT App 362, ¶ 7, 199 P.3d 971, 974 (the civil conspiracy claim failed because plaintiffs had not alleged any meeting of the minds).

While it is not necessary to prove that there was a formal agreement, there must be circumstantial evidence to support inferring a conspiracy including "the nature of the act done, the relations of the parties, and the interests of the alleged conspirators." *Israel Pagan Est. v. Cannon*, 746 P.2d 785, 791 (Utah Ct. App. 1987). This standard is not a low one. To prove conspiracy by circumstantial evidence, "there must be substantial proof of circumstances from which it reasonably follows, or at least may be reasonably be inferred, that the conspiracy

36

existed. It cannot be established by conjecture and speculation alone." *Id.*; *see also*

*Pintar v. Houck,* 2011 UT App 304, ¶ 18, 263 P.3d 1158, 1166 ("[T]hey must have

presented sufficient facts to show that the [purported conspirators] reached an

agreement and acted in concert to achieve their common unconstitutional goal.").

The Utah Supreme Court's recent decision in *Harvey* is illustrative. In

*Harvey*, the Utah Tribal Employment Rights Office (UTERO) sent a letter to

several oil and gas companies stating that Rocks Off Inc. was no longer authorized

to perform work on Uintah and Ouray Reservation and use of Rocks Off Inc.

would result in sanctions. *Id.* ¶ 10. Oil and gas companies ceased using Rocks Off

because of the letter. *Id.* ¶ 11. The plaintiff brought a claim for civil conspiracy

against one of the oil companies – Newfield. *Id.* ¶ 11. The court found that the

plaintiff failed to sufficiently plead a meeting of the minds, stating that the Ute

Tribe had issued a unilateral directive and Newfield had simply complied with

that directive. *Id.* ¶ 70. This interaction between Newfield and UTERO was

insufficient on its own to demonstrate a meeting of the minds. *Id.*

Here, as in *Harvey*, there are no facts in the complaint beyond legal

conclusions that Mr. Corey and Mr. Finlinson had a meeting of the minds. Rather,

the allegations suggest that Mr. Corey acted unilaterally in his attempt to mislead

the UDAF and Mr. Finlinson unfortunately, and perhaps even negligently,

37

believed him. (Compl. ¶¶ 18-25.) There are no facts that demonstrate Mr.

Finlinson was aware of this deception nor are there any provided reasons why Mr.

Finlinson would want the deception to go unnoticed. No relationship between the

parties is identified, and no fact is alleged that demonstrates any interest Mr.

Finlinson would have in the unlawful transfer of the cattle to Titan. *Israel Pagan*

*Est.*, 746 P.2d at 791. Instead, the complaint simply concludes that because Mr.

Finlinson insufficiently confirmed ownership of the 282 Cattle and issued the

certificates to Mr. Corey, he must have been aware of and willingly participated in

the fraudulent actions himself. (Compl. ¶¶ 61-65, 179-80.) Plaintiff simply assigns

Mr. Finlinson an active role in the deception without any basis in fact. Such a

conclusory assumption is not sufficient to demonstrate a meeting of the minds.

*Fid. Nat. Title Ins. Co*, 2015 UT App 19 at ¶¶ 17-18 ("[Plaintiff] must do more to

allege a meeting of the minds than simply imply that this element is satisfied").

The complaint must assert facts that show the parties "<u>agreed</u> on a course of

fraudulent behavior". *Id.* (emphasis added).

To the extent Plaintiff's claim is based on Utah common-law conspiracy, it

should be dismissed.

**4.2.   To the extent Plaintiff's conspiracy claim is based in federal**

38

**law, it must also be dismissed.**

"To prove a conspiracy under § 1983, a plaintiff must show at least a combination of two or more persons acting in concert and an allegation of a meeting of the minds, an agreement among the defendants, or a general conspiratorial objective." *Frasier v. Evans,* 992 F.3d 1003, 1024 (10th Cir. 2021) (citations and quotations omitted). "And a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants. Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim." *Id.* (quoting *Tonkovich v. Kan. Bd. of Regents,* 159 F.3d 504, 533 (10th Cir. 1998) (further citations and quotations omitted). Plaintiff must plead that defendants "must have actually formed an agreement—even though it not be express[— and must also plead that] the agreement must be illegal." *Id.* at 1025 (citations and quotations omitted). "In the § 1983 context, that means the agreement must relate to some deprivation of a federally protected right." *Id.* (citations and quotations omitted). "[T]o recover under a § 19834 conspiracy theory, a plaintiff must plead and prove not only a conspiracy, but also an actual deprivation of rights; pleading and proof of one without the other will be insufficient." *Dixon v. City of Lawton, Okla.,* 898 F.2d 1443, 1449 (10th Cir. 1990) (citations omitted).

Plaintiff's § 1983 conspiracy claim fails for many reasons. First, for the reasons stated in Sections 3 and Sections 5, Plaintiff have not stated a claim for an actual deprivation of a federally protected right. Corey's alleged conversion of the 282 cattle, and Mr. Finlinson's allegedly improper brand inspection, do not constitute a violation of the Fourth or Fourteenth Amendments.

Second, for the reasons stated in Section 4.1, Plaintiff has not alleged a sufficient meeting of the minds or general conspiratorial objective. Again, Plaintiff's facts belie the existence of a meeting of the minds—Plaintiff pleads that Corey intentionally misrepresented the ownership of the cattle to Mr. Finlinson, not that they agreed together to falsify the ownership of the cattle. (Compl. ¶ 60.) Plaintiff can only allege that Mr. Finlinson "knew or should have known" that the cattle belonged to Plaintiff, and that Corey falsified the brand inspection certificates. (Compl. ¶¶ 61–63.)

This case is also far afield from *Soldal*, where officers (a) saw known illegal acts happening, (b) physically prevented the plaintiff, who was present, from protecting his property, (c) took other actions to ensure that the property was wrongfully transferred, and (d) had been properly implicated in a conspiracy to deprive the plaintiff of his property (a finding that the U.S. Supreme Court refused to review). *Soldal*, 506 U.S. at 58–60 & n.6.

40

Plaintiff is required to plead that there was a meeting of the minds, or a conspiratorial objective—proof that Mr. Finlinson wasn't just a bit player who may have let cattle out of the state to be sold by someone other than their owner, but an equal antagonist who worked with the object of depriving Plaintiff of his cattle. No such facts are pleaded (nor could they be pleaded), and thus Plaintiff's claim should be dismissed.

### 5.  Plaintiff Fails to State a Substantive Due Process Claim (Plaintiff's Eleventh Cause of Action).

Plaintiff's final constitutional claim against Mr. Finlinson is for "Deprivation of Property without Substantive Due Process of Law…." (Compl.  at 25.)  This claim does not state a claim for relief.

Claims for violation of the substantive component of the Fourteenth Amendment's due process clause are "murky waters …." *Williams v. Berney,* 519 F.3d 1216, 1220 (10th Cir. 2008).  "To establish a substantive due process violation, a plaintiff must show that the officers acted in a manner so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Ellis ex rel. Estate of Ellis v. Ogden City,* 589 F.3d 1099, 1101 (10th Cir. 2009) (citations and quotations omitted).  Such a violation occurs "in the narrowest of circumstances." *Becker v. Kroll,* 494 F.3d 904, 922 (10th Cir. 2007).  "This

41

standard is met only in the most extreme circumstances, typically involving some violation of physical liberty or personal physical integrity," such as holding children at gunpoint or performing blood tests and genital exams on minor children without parental consent. *Id.* at 923 (citing *Holland v. Harrington*, 268 F.3d 1179 (10th Cir. 2001); *Dubbs v. Head Start, Inc.*, 336 F.3d 1194 (10th Cir. 2003).

The protections provided by the Substantive Due Process Clause "apply to transgressions above and beyond those covered by the ordinary civil tort system." *Williams*, 519 F.3d at 1220. A plaintiff must show that the defendant abused or misused government power "to a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Williams*, 519 F.3d at 1220.

In this case, Plaintiff pleads no facts showing outrageous, conscience-shocking conduct. As most, Plaintiff alleges that Mr. Finlinson didn't do his legally prescribed duty. But a violation of a state statute in and of itself does not create a federal constitutional violation. *Becker*, 494 F.3d at 917. And allowing 282 head of cattle to be transferred out of state, even if unprofessional, is far less outrageous conduct than engaging in an unnecessary high-speed chase causing the death of the suspect, *Ellis*, 589 F.3d at 1102–03, maliciously targeting a

42

physician in a professional malfeasance investigation, *Becker*, 494 F.3d at 923, a public official's statement that a murder victim may have been killed by autoerotic asphyxiation, *Livsey v. Salt Lake Cnty.*, 275 F.3d 952, 953, 958 (10th Cir. 2001), or an unprovoked physical assault by a government official on a business owner. *Williams*, 519 F.3d at 1225–26.

Plaintiff cannot state a substantive due process claim. In light of *Williams*, *Ellis*, *Becker*, *Livesy*, and other binding Tenth Circuit cases, he certainly cannot state a clearly established one. The Eleventh Claim for Relief should be dismissed.

## CONCLUSION

For the reasons stated, the State Defendants request that the Court grant their motion and dismiss all counts of Plaintiff's Complaint against them, with prejudice.

RESPECTFULLY SUBMITED THIS 14th day of Feburary , 2022.

OFFICE OF THE UTAH ATTORNEY GENERAL

/s/ *Kyle J. Kaiser*
KYLE J. KAISER
ADAM D. WENTZ
Assistant Utah Attorneys General
*Counsel for State Defendants*

43

## WORD COUNT CERTIFICATION

I certify that **STATE DEFENDANTS' MOTION TO DISMISS** contains

7,7701 words[3] and complies with DUCivR 7-1(a)(4).


DATED: February 14, 2022



OFFICE OF THE UTAH ATTORNEY GENERAL

/s/ Kyle J Kaiser
KYLE J. KAISER
Assistant Utah Attorney General
Counsel for State Defendants

---

[3] On Dec. 1, word count limits were adjusted in a new version of Local Rule 7-1. Motions filed under 12(b) are now limited at 25 pages or 7,750 words.