KYLE J. KAISER (13924)
ADAM D. WENTZ (12711)
Assistant Utah Attorneys General
160 East 300 South, Sixth Floor
PO Box 140856
Salt Lake City, UT 84114-0856
Telephone: (801) 366-010
Facsimile: (801) 366-0101
E-mail: kkaiser@agutah.gov
        awentz@agutah.gov
Counsel for State Defendants

---

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION
## SOUTHERN REGION

| | |
|---|---|
| DARRELL SMITH,<br><br>     Plaintiff,<br><br>v.<br><br>UTAH DEPARTMENT OF AGRICULTURE AND FOOD, SHANN FINSLINSON, THANE MARSHALL, COREY CATTLE COMPANY, LLC, and MIKE COREY,<br><br>     Defendants. | **STATE DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**<br><br>**Case No. 4:21-cv-00118-DN-PK**<br><br>**Judge David Nuffer**<br><br>**Magistrate Judge Paul Kohler** |

1

## TABLE OF CONTENTS

TABLE OF CONTENTS .......................................................................................... 2

TABLE OF AUTHORITIES ................................................................................ 3

LEGAL ARGUMENT ........................................................................................... 5

1.   Plaintiff's Negligence Claims Remain Barred by the Immunity Act ................. 5

   1.1.   Plaintiff's Narrow Interpretation Obliterates the Inspection Exception of the Immunity Act. .......................................................................................... 6

      1.1.1.   The Inspection Exception Applies to Inspections of Personal Property. ................................................................................................................ 6

      1.1.2.   Plaintiff's Analysis of the Inspection Exception Cases Is Overly Restrictive. .......................................................................................................... 7

      1.1.3.   Plaintiff's Narrow Interpretation of "for the Benefits of the Public Generally" Is Not Supported. ........................................................................... 11

   1.2.   The Licensing Exception Retains Immunity. ......................................... 11

   1.3.   The Misrepresentation Exception Does Not Include a "Detrimental Reliance" Requirement. ..................................................................................... 14

2.   The Willful Misconduct Cause of Action Should Be Dismissed. ................... 16

   2.1.   There Is No Cause of Action for "Willful Misconduct." ......................... 16

   2.2.   The Use of the Phrase "Willfully and Knowingly," Without Supporting Factual Allegations, Is Conclusory .................................................................... 17

3.   Mr. Finlinson Is Entitled to Qualified Immunity for Plaintiff's Fourth Amendment Claim. ............................................................................................. 18

   3.1.   Mr. Finlinson Never Seized Plaintiff's Cattle. ....................................... 18

   *3.2.*   Mr. Finlinson Is Entitled to Qualified Immunity. ................................ 21

4.   Plaintiff's Conspiracy Claim Should Be Dismissed. ...................................... 22

5.   Plaintiff's Substantive Due Process Claim Must be Dismissed. ...................... 23

CONCLUSION ................................................................................................... 24

WORD COUNT CERTIFICATION ...................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

Federal Cases

*Brown v. Millard Cnty.*,
   47 F. App'x 882 (10th Cir. 2002) .................................................................. 20, 21
*Brown v. Millard Cnty.*,
   No. 2:99CV659K, 2001 WL 650642 (D. Utah April 25, 2001).................................... 20
*California v. Hodari D.*,
   499 U.S. 621 (1991) ............................................................................ 18, 19
*City of Tahlequah, Okla. v. Bond*,
   142 S. Ct. 9 (2021) (per curiam.................................................................. 22
*DeShaney by First v. Winnebago Cty. Dep't of Soc. Servs.*,
   812 F.2d 298 (7th Cir. 1987).................................................................... 19
*Frasier v. Evans*,
   992 F.3d 1003 (10th Cir. 2021) ................................................................. 23
*Hope v. Pelzer*,
   536 U.S. 730 (2002) .............................................................................. 22
*Jensen v. W. Jordan City*,
   No. 2:12-CV-736-DAK, 2016 WL 4256946 (D. Utah Aug. 11, 2016) ......................... 15
*Marcus v. McCollum*,
   394 F.3d 813 (10th Cir. 2004).................................................................... 20
*Mullenix v. Luna*,
   577 U.S. 7 (2015) (per curiam.................................................................... 21
*Soldal v. Cook County, Illinois*,
   506 U.S. 56 (1992) ............................................................................... 19
*Stanko v. Maher*,
   419 F.3d 1107 (10th Cir. 2005)................................................................. 19
*Taylor v. Riojas*,
   141 S. Ct. 52 (2000) ............................................................................ 22
*United States v. Jacobsen*,
   466 U.S. 109 (1984) ............................................................................. 18

State Cases

*Cope v. Utah Valley State Coll.*,
   2014 UT 53, 342 P.3d 243....................................................................... 11, 19

3

*Debry v. Salt Lake,*
   *City,* 835 P.2d 981 (Utah Ct. App. 1992) ................................................... 15
*Ericksen v. Salt Lake City Corp.,*
   858 P.2d 995 (Utah 1993) ...................................................... 6, 7, 8, 11
*Ilott v. Univ. of Utah,*
   2000 UT App 286, 12 P.3d 1011.............................................................. 6, 9
*Loveland v. Orem City Corp.,*
   746 P.2d 763 (Utah 1987) ...................................................................... 15
*Nixon v. Salt Lake City Corp.,*
   898 P.2d 265 (Utah 1995)................................................................. 6, 9, 11
*Salo v. Tyler,*
   2018 UT 7, 417 P.3d 581 (citing Utah Code § 63G-7-102) ................................. 17, 23
*Thayer v. Washington Cty. Sch. Dist.,*
   2012 UT 31, 285 P.3d 1142 .................................................................... 12

State Statutes

Utah Code § 63-30-10(1)(d)(1989) ............................................................... 7
Utah Code § 63G-7-102(1) ...................................................................... 13
Utah Code § 63G-7-201(3)(c)(i)............................................................. 16, 17
Utah Code § 63G-7-201(4)(d) ................................................................ 5, 6, 8
Utah Code § 63G-7-201(4)(f) ................................................................... 14
Utah Code § 63G-7-202(1)(c) ................................................................... 16

Other Authorities

2017 Utah Laws Ch. 300 (H.B. 399) .............................................................. 13
DUCivR 7-1(a)(4).............................................................................. 25
Louis L'Amour, *Restlers of West Fork*, (Bantam paperback ed. 1992) ...................... 20

4

## LEGAL ARGUMENT

Plaintiff's Memorandum in Opposition to the State Defendants' Motion to Dismiss[1] fails to resuscitate the causes of action for which State Defendants seek dismissal. The Court should reject Plaintiff's arguments and grant their Motion to Dismiss.

### 1. Plaintiff's Negligence Claims Remain Barred by the Immunity Act.

The Governmental Immunity Act of Utah bars negligence claims against the State Defendants when an injury arises out of or in connection with, or results from, among other things

- "a failure to make an inspection or making an inadequate or negligent inspection," Utah Code § 63G-7-201(4)(d);

- "the issuance … of , any permit, license, certificate approval order, or similar authorization," id. § 63G-7-201(4)(c); or

- "a misrepresentation by an employee whether or not the misrepresentation is negligent or intentional," id. § 63G-7-201(4)(f).

Plaintiff's attempts to argue that the reservations of immunity in the Immunity Act do not apply fail. Plaintiff narrowly interprets caselaw to read out

---

[1] Doc. 17 ("Pl.'s Opp.").

5

the inspection exception; he incorrectly argues that the failure of one exception means the failure of all; and he reads in a new element to the misrepresentation that is not required by the Immunity Act or by case law.  Plaintiff's negligence claim should be dismissed.

### 1.1.   Plaintiff's Narrow Interpretation Obliterates the Inspection Exception of the Immunity Act.

Plaintiff misreads the Immunity Act and performs an incomplete interpretation of three cases discussing the inspection exception in the Immunity Act—*Ericksen v. Salt Lake City Corp.*, 858 P.2d 995 (Utah 1993); *Nixon v. Salt Lake City Corp.*, 898 P.2d 265 (Utah 1995); and *Ilott v. Univ. of Utah*, 2000 UT App 286, 12 P.3d 1011. A critical analysis of Plaintiff's overly restrictive analysis reveals the inspection exception's appropriate application to the current case.

### 1.1.1.   The Inspection Exception Applies to Inspections of Personal Property.

First, Plaintiff argues that the inspection exception applies only to inspections of real property. [2]  The current version of the Immunity Act does not limit the inspection exception to real property. Utah Code § 63G-7-201(4)(d). And the version of the inspection exception to the Immunity Act existing at the time *Ericson* was decided, applied to inspections of "any property." *Ericksen,* 858

---

[2] Pl.'s Opp. at 5 n.25.

P.2d at 997 (quoting Utah Code § 63-30-10(1)(d)(1989)).  Plaintiff modified *Eriksen's* language in footnote 25 of his Opposition, changing "any property" to "real property" to give credibility to his argument that inspection immunity only applies to buildings and equipment. But the court should look to the plain text of the statute, not Plaintiff's bracketed modification. The fact that cases applying the exception occur in inspections of real property does not mean that the exception *only* applies to inspections of real property. Nearly one million dollars' worth of cattle would certainly fit into the category of "any property," under *Ericksen* or the current Immunity Act.

### 1.1.2. Plaintiff's Analysis of the Inspection Exception Cases Is Overly Restrictive.

An examination of each of the cases cited by Plaintiff demonstrates that his interpretations are overly restrictive and do not support his attempted narrowing of the inspection exception.

- *Ericksen.*

Plaintiff attempts to use *Ericksen*'s "narrow immunity for inspections" language to mean something it does not.[3] In *Ericksen*, what makes the interpretation "narrow" is that immunity only applies to the conclusions or results

---

[3] Pl.'s Opp. at 5.

7

of the inspection and not "to broadly shield the inspector from his negligent acts as he went about making the inspection." *Ericksen,* 858 P.2d at 998. In other words, the state can be liable for an injury that occurred because of the inspector's negligent acts during an inspection— in *Erickson,* the inspector's negligent moving of a garage door that caused the plaintiff to fall from a ladder and injure himself—but cannot be liable for injuries resulting from "conclusions or results of the inspection." *Id.* at 997–98.

This is materially different from the circumstances of the current case. Mr. Finlinson did not commit an unrelated negligent act while he happened to be inspecting the cattle.  He did not leave a chute open, allowing cattle to escape and cause an accident with a passing vehicle, for example.  Instead, the conclusions and results of the inspection were purportedly negligent.[4] Mr. Finlinson apparently incorrectly concluded during the inspection that Titan was the owner of the livestock and issued Brand Inspection Certificates based on that conclusion. As a result, the cattle were driven across state lines, causing the loss complained of by Plaintiff.  This is the type of harm protected by the inspection exception. Utah Code § 63G-7-201(4)(d).

---

[4] Pl.'s Compl. ¶¶ 49–50.

8

- ***Nixon***

*Nixon* is another case examining the dichotomy between the "acts of maintenance rather than acts of inspection .... " *Nixon,* 898 P.2d at 270. In *Nixon*, the court refused to apply the inspection exception to a case in which a custodian is injured by using improperly maintained equipment and with no official inspection involved.  That is nowhere near the same factual circumstances of the current case.

- ***Ilott***

In Plaintiff's analysis of *Ilott*, he misstates the *Ilott* court by claiming it held that immunity only applies to "the governmental inspections of property owned by third parties to determine whether the property complied with safety codes." *Ilott*, 2000 UT App 286, at ¶ 14, 12 P.3d at 1014.[5] *Ilott* makes no such assertion. This language is quoted from a paragraph in which the court explains that the focus of the *Ericksen* and *Nixon* cases involves inspections of this type, but in no way does the court state that only that specific type of inspection is granted immunity. *Id.*

Further, and just like the court's conclusions in *Nixon*, the *Ilott* court makes the determination that the actions of the defendants were "acts of maintenance

---

[5] Pl.'s Opp. at 6.

9

rather than acts of inspection," which further distinguishes *Ilott*. *Id.* at ¶ 16. With fundamental factual distinctions between the cases, this Court need only look to the policy justifications for the inspection exception outlined in *Ilott* to see that UDAF Brand Inspections—line by line—are consistent with those justifications.

Brand Inspections are regulatory inspections conducted by the government that the public has an interest in protecting from tort liability. *Id.* at ¶ 10. Excluding defendants from inspection immunity in these three cases replied on by Plaintiff makes perfect sense based on those distinctions as it would lead to an overly broad application of inspection immunity.

Mr. Finlinson conducted an official Brand Inspection of third-party property on behalf of a government entity, and the erroneous results of that inspection lead to the injury experienced by Mr. Corey. The injury experienced by Mr. Corey is the direct and proximate cause of a formal inspection with a capital "I" of his cattle before they were transferred across state lines. This type of capital "I" inspection was wholly missing from the facts of *Nixon* and *Ilott,* and the injury in *Ericksen* was deemed unrelated to the conclusions of that inspection.  Therefore, the UDAF's inspection is immune under the inspection exception.

10

### 1.1.3. Plaintiff's Narrow Interpretation of "for the Benefits of the Public Generally" Is Not Supported.

Plaintiff improperly restricts the meaning of "for the benefit of the public generally" found in *Ericksen,* 858 P.2d at 998. The policy considerations outlined in *Nixon* regarding public health and safety can be applied to avoiding cattle theft just as they can be applied to building inspections. Cattle inspections are still "regulatory activities which are engaged in for the benefit of the public generally." *Nixon,* 898 P.2d at 271. But "a public duty need not extend to the entire world." *Cope v. Utah Valley State Coll.*, 2014 UT 53, ¶ 32, 342 P.3d 243, 254. "The most common examples of public duties include … a duty a police officer assumes to protect the public from harm caused by the criminal acts of third parties …." *Id.* at ¶ 31, 342 P.3d at 254. That's exactly what Mr. Finlinson was doing when he was engaged in the brand inspection.

Accordingly, the Inspection Exception retains immunity for the State Defendants on Plaintiff's negligence claim.

### 1.2.   The Licensing Exception Retains Immunity.

Plaintiff next argues that the licensing exception cannot be interpreted in a way that expands established application of the inspection exception.[6] This

---

[6] Pl.'s Opp. at 7.

11

argument wrongly assumes government immunity under the licensing exception is inseparably tied to the inspection exception. Concluding that the government is not immune under one exception, but is under another, does not make either part of the act "inoperative or superfluous," it simply means that the facts of the case may align with one exception but not the other. *Thayer v. Washington Cty. Sch. Dist.*, 2012 UT 31, ¶ 24, 285 P.3d 1142.

Plaintiff provides no fact-specific analysis as to why the licensing exception should not apply to the UDAF brand inspection. Instead, he argues generally that the State Defendants' interpretation is overly broad and cites only *Thayer* to support that assertion.[7] In *Thayer*, the court determined that a school vice-principal's agreement that a firearm could be on campus wasn't a "license" within the licensing exception. It noted that "[g]overnmental employees' actions are frequently, if not always, approved or authorized by their employers in some fashion" and cautions that including "such routine operational approvals" would lead the licensing exception to swallow the rule. *Id.* at ¶ 24.

The facts of the current case are fundamentally distinguishable from *Thayer*. The UDAF Brand Inspection and subsequently issued certificate is exactly

---

[7] *Id.* at 7–9.

the type of "formal, official authorization by a governmental body or employee endowed with regulatory power to issue such an authorization" that the *Thayer* court references. *Id.* at ¶ 28.

Next, to sidestep the licensing exception, plaintiff argues that the UDAF's issuance of the Brand Inspection Certificates was not the proximate cause of Mr. Corey's injury, but that "Mr. Finlinson's negligent and willful failure to properly verify the ownership of the 282 cattle before they were removed from the Corey cattle feedlot was the proximate cause of Mr. Smith's injuries."[8] This argument fails.

The "proximate cause" standard articulated in *Barneck v. Utah Department of Transportation,* and cited by Plaintiff, was legislatively abrogated. *See* GOVERNMENTAL IMMUNITY AMENDMENTS, 2017 Utah Laws Ch. 300 (H.B. 399), § 1. The standard is now whether "there is some causal relationship between the conduct or condition and the injury" that is "more than any causal connection but less than proximate cause" that is "sufficient to conclude that the injury originates with, flows from, or is incident to the conduct or condition. Utah Code § 63G-7-102(1).

---

[8] Pl.'s Opp. at 9–10.

13

There is "some causal relationship" between issuing the license and Plaintiff's injury such that the injury "is incident to" the inspection. The Brand Inspection Certificates were the green light that allowed Mr. Smith's cattle to be taken across state borders and given to Titan and contains the erroneous conclusions of ownership about which the Plaintiff complains.[9] Without the formal approval in the form of issuing the Brand Inspection Certificate, the subject cattle would not have had UDAF authorization for transfer. If the Court accepts Plaintiff's interpretation and separates the act of the inspection from the formal issuance of any permit, license, certificate, approval, or order, it would render the licensing exception inoperable.

### 1.3.   The Misrepresentation Exception Does Not Include a "Detrimental Reliance" Requirement.

For the reasons stated in State Defendant's Motion to Dismiss, the misrepresentation exception retains immunity to Plaintiff's negligence claim. Utah Code § 63G-7-201(4)(f).  In response, Plaintiff added a fictitious requirement— "detrimental reliance"—to the Immunity Act's misrepresentation exception. Plaintiff cites two cases in which detrimental reliance likely played a role in the courts finding that the misrepresentation exception applied, but neither decision

---

[9] Compl. ¶¶ 60, 63, 65, 92(b).

14

requires that detrimental reliance on the part of the plaintiff to trigger the misrepresentation exception. *Loveland v. Orem City Corp.*, 746 P.2d 763 (Utah 1987); *Jensen v. W. Jordan City*, No. 2:12-CV-736-DAK, 2016 WL 4256946 (D. Utah Aug. 11, 2016). Plaintiff then cites *Debry v. Salt Lake City,* 835 P.2d 981 (Utah Ct. App. 1992) to prove the same point, but the brief mention of reliance on representations as quoted by Plaintiff is not even mentioned in the section of the opinion regarding the misrepresentation exception, but in the section of the opinion addressing a claim for fraud. *Id.* at 988. Detrimental reliance is simply not required for the misrepresentation exception to apply and its alleged absence from the current case should not prevent immunity for UDAF under the misrepresentation exception.

Plaintiff then spends several pages analyzing non-binding precedent, unhelpful in interpreting the Utah's Immunity Act.[10] The striking similarities between *Debry* and the instant facts as detailed in the Motion to Dismiss, demonstrate that the misrepresentation exception applies.

For these reasons, the inspection, license, and misrepresentation exceptions all retain immunity, and the Court should dismiss Plaintiff's negligence claim.

---

[10] Pl.'s Opp. at 13–15.

15

## 2.  The Willful Misconduct Cause of Action Should Be Dismissed.

For the reasons stated in State Defendants' original motion, Plaintiff's "Willful Misconduct" cause of action should be dismissed because there is no separate cause of action for willful misconduct and because Plaintiff has not sufficiently pleaded facts supporting such a claim.[11]  Plaintiff's contrary arguments are unavailing.

### 2.1.   There Is No Cause of Action for "Willful Misconduct."

If a government employee engages in fraud or willful misconduct during the scope of employment or under color of authority, that then allows a plaintiff to pursue a civil action "based on the same subject matter against the employee." Utah Code § 63G-7-201(3)(c)(i). However, this provision does not create an independent tort of "willful misconduct." In fact, the Immunity Act itself forecloses a new cause of action: "No cause of action or basis of liability is created by any waiver of immunity in this chapter." Utah Code § 63G-7-202(1)(c). Plaintiff has invented a cause of action that does not exist to side-step government immunity for negligence—the cause of action under which the actions of the State

---

[11] State Defs.' Mot. to Dismiss at 24–25.

16

Defendants actually fall and for which they retain immunity under the GIA. *Id.* §§ 63G-7-201(4)(c)-(d), (f).

### 2.2.   The Use of the Phrase "Willfully and Knowingly," Without Supporting Factual Allegations, Is Conclusory

Should the court find that Plaintiff has stated some cause of action, that action is insufficiently pleaded. The Opposition Memorandum outlines multiple allegations in the Complaint that do little more than to suggest negligence on the part of the UDAF employees. But these allegations, even with all reasonable inferences drawn therefrom, fall short of demonstrating intentional performance of a wrongful act and an "awareness that injury will likely result." *Salo v. Tyler, 2018 UT 7, ¶ 41, 417 P.3d 581, 590 (citing Utah Code § 63G-7-102).* Defendant's Motion to Dismiss addresses the insufficiency of these allegations in detail.[12]

Plaintiff also argues that the alleged negligent acts of Messrs. Finlinson and Marshall and the resulting harm to Mr. Smith alone should allow this court to infer their mental state; this despite a total absence of any factual allegations regarding knowledge or willfulness.[13] The Complaint and Opposition Memorandum do little more than to suggest that the UDAF employees possibly

---

[12] State Defs.' Mot. at 25–28.
[13] Pl.'s Opp. at 17.

17

had constructive notice of potential injury, which is insufficient to demonstrate they acted willfully and knowingly and sidestep immunity. The facts as pleaded suggest that Mr. Finlinson simply fell for Mr. Corey's deceit; a fact which hardly demonstrates knowledge that his injuries would cause injury. The Court cannot make inferences about factual allegations not pled.  Accordingly, the "willful misconduct" cause of action should be dismissed.

### 3.  Mr. Finlinson Is Entitled to Qualified Immunity for Plaintiff's Fourth Amendment Claim.

#### 3.1.  Mr. Finlinson Never Seized Plaintiff's Cattle.

Mr. Finlinson cannot be liable for a Fourth Amendment violation because he did not intentionally acquire physical control over Plaintiff's cattle. *See California v. Hodari D.*, 499 U.S. 621, 624 (1991).  Citing *United States v. Jacobsen*, 466 U.S. 109 (1984), Plaintiff alleges that this standard isn't applicable because this case involved a seizure of personal property rather than the seizure of a person. But *Jacobsen* itself drew its articulated standard—"some meaningful interference with an individual's possessory interests in that property"—from the U.S. Supreme Court's "oft-repeated definition of 'seizure' of a person within the meaning of the Fourth Amendment ….." *Id.* at n.5 Furthermore, in *Jacobsen*, the Court determined that a government agent "seized" a FedEx package when the

package was given to the agent by a FedEx employee for testing.  *Id.* at 120–21.
Thus, the government agent did exercise physical control over the property, even
for a short time (and did not violate the constitution in doing so).  *Id.*

If there was any Fourth Amendment event in this case, it was when Mr.
Finlinson performed the brand inspection.  But in that inspection, "[t]here was no
Fourth Amendment violation. A warrantless search of cattle about to be
transported outside the county was authorized by statute to protect the urgent
state interest of preventing trafficking in lost or stolen cattle that inspection is
constitutional." *Stanko v. Maher,* 419 F.3d 1107, 1115 (10th Cir. 2005).

What plaintiff really pleads is the opposite of a Fourth Amendment
violation—that the Fourth Amendment *required* Mr. Finlinson to seize the cattle
because he should have known that Mr. Corey didn't own them. *Cf. Stanko,* 419
F.3d at 1115. But that is not how the Fourth Amendment works: "[T]he
constitution is a charter of negative rather than positive liberties …." *DeShaney by
First v. Winnebago Cty. Dep't of Soc. Servs.,* 812 F.2d 298, 301 (7th Cir.
1987),(Posner, J.) *aff'd sub nom. DeShaney v. Winnebago Cty. Dep't of Soc. Servs.,*
489 U.S. 189, (1989).

Likewise, Plaintiff's invocation of *Soldal v. Cook County, Illinois,* 506 U.S. 56
(1992) is unavailing.  The *Soldal* rule applies only when there is a "private

19

repossession" and the officer does not simply act "to keep the peace, but … cross the line [to] affirmatively intervene to aid the repossessor." *Marcus v. McCollum*, 394 F.3d 813, 819 (10th Cir. 2004).

Mr. Finlinson was not at the scene when Mr. Corey took allegedly unlawful possession of the cattle. He did not aid or help Mr. Corey do so. At worst, he simply allowed Mr. Corey to take stolen cattle out of the state. He did not "compel" the seizure. *Brown v. Millard Cnty.*, 47 F. App'x 882, 889 (10th Cir. 2002) (unpublished), *aff'g Brown v. Millard Cnty.*, No. 2:99CV659K, 2001 WL 650642, at *1 (D. Utah April 25, 2001) (unpublished) ("There is no case that the Court has found where the long distance type of advice given here can constitute a civil rights violation without more."). *Soldal* does not apply here.

Based on the facts alleged by Plaintiff, Mr. Finlinson may not have been Hopalong Cassidy, rooting out cattle rustlers and exacting justice for an assault on his friend. *See* Louis L'Amour, *Restlers of West Fork*, 206 (Bantam paperback ed. 1992) (telling a story of cattle rustlers registering another person's brand to steal cattle). But Mr. Finlinson's actions, even as pleaded, did not violate the Fourth Amendment. The claim should be dismissed.

### 3.2.   Mr. Finlinson Is Entitled to Qualified Immunity.

Eeven if the Court believes a constitutional violation may have occurred, the claim should be dismissed because Mr. Finlinson is entitled to qualified immunity as an affirmative right to ensure that the cattle were not stolen was not clearly established by controlling Supreme Court or Tenth Circuit precedent.

In opposition, Plaintiff has not identified one controlling precedent demonstrating the law is as he maintains.  Plaintiff cites to *Soldal* "and its progeny," but there is no Tenth Circuit case applying *Soldal* outside of the context of (1) private repossession of someone else's property (2) with law enforcement actively involved in that repossession.  *Cf. Brown*, 47 F. App'x at 889 (concluding no violation occurred when the government officials gave long-distance advice about a repossession). And this degree of specificity is "especially in the Fourth Amendment context …." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam).

Next, Plaintiff alleges that, on the "sliding scale", qualified immunity should be denied because Mr. Finlinson's conduct was "obviously egregious."[14] But Plaintiff points to no case showing that conduct of this type has been held to be particularly egregious.  It is far from the conduct the Supreme Court has held to

---

[14] Pl.'s Opp. at 25.

be "obvious" without a case on point—torturing an inmate in the hot Texas sun at a whipping post or allowing an inmate to wallow in human excrement for six days. *Hope v. Pelzer*, 536 U.S. 730 (2002); *Taylor v. Riojas*, 141 S. Ct. 52 (2000) (per curiam). And it is even less egregious than an officer's decision to use deadly force on a suspect who wielded a hammer, conduct the Supreme Court recently reversed the Tenth Circuit's denial of qualified immunity on. *See City of Tahlequah, Okla. v. Bond*, 142 S. Ct. 9 (2021) (per curiam).

*Soldal* did not put Mr. Finlinson on notice that his processing of the Brand Inspection Certificates violated Plaintiff's Fourth Amendment rights, and the conduct was not sufficiently egregious to excuse Plaintiff's failure to find a case on point.  As such, the Fourth Amendment claim should be dismissed on qualified immunity grounds.

### 4.  Plaintiff's Conspiracy Claim Should Be Dismissed.

For the reasons stated in State Defendants' original Motion, Plaintiff's conspiracy claim is insufficiently pleaded and must be dismissed. In response, Plaintiff cites to generic statements in the complaint that do not demonstrate any sort of meeting of the minds or conspiratorial objective. But these are insufficient, especially considering the specific paragraphs showing that it was Mr. Corey's

unilateral action to deceive the State Defendants and move the cattle out of state,[15] and that the State Defendants' actions were little more than negligence.[16]

Furthermore, in the Opposition, Plaintiff appears to abandon any common-law conspiracy claim, instead clarifying that Plaintiff "asserts a claim for civil conspiracy under § 1983."[17] But to state a § 1983 conspiracy claim, a plaintiff must plead and prove that the conspirators conspired to deprive the plaintiff of a federally protected right. *Frasier v. Evans*, 992 F.3d 1003, 1024–25 (10th Cir. 2021). Plaintiff did not address this element, either in the Complaint or in his Memorandum in Opposition. And for the reasons stated in Sections 3 and 5, Plaintiff has not pleaded any unconstitutional seizure or violation of the Due Process Clause. Accordingly, Plaintiff's § 1983 conspiracy claim must also fail.

**5. Plaintiff's Substantive Due Process Claim Must be Dismissed.**

Finally, for the reasons stated in State Defendants' Motion to Dismiss, Plaintiffs' substantive due process claim must be dismissed. In opposition, Plaintiff

---

[15] *See, e.g.,* Pl.'s Compl. ¶¶ 47-48, 52–59, 60 ("*Mr. Corey misrepresented* in the Brand Inspection Certificates ….").

[16] *Id.* ¶¶ 61 ("Finlinson *knew or should have known* [about the cattle ownership] based on the information available to him in the brand book"), 62, 63, ("Finlinson knew or should have known … ), 64 ("Finlinson never contacted Mr. Smith nor inquired [about ownership]"), 65 ("Finlinson failed to stop the transportation…."), ¶¶74–81 (failing to show any communication between Marshall and Finlinson or Corey).

[17] Pl.'s Opp. at 25.

23

simply concludes that the alleged conduct "does indeed shock the conscience."[18]

Plaintiff provides no authority to support that that assertion, nor does Plaintiff

contradict State Defendants' authority concluding that much more egregious

conduct *does not* shock the conscience.[19]  And Plaintiff most definitely has not met

his qualified immunity burden to show that it was clearly established that this

conduct was conscience-shocking and violative of substantive due process by

identifying precedent that would put *every* reasonable official on notice.

Accordingly, this claim must be dismissed.

<u>CONCLUSION</u>

For the reasons stated, the State Defendants request that the Court grant

their motion and dismiss all counts of Plaintiff's Complaint against them, with

prejudice.

RESPECTFULLY SUBMITTED THIS 6th day of May, 2022.

OFFICE OF THE UTAH ATTORNEY GENERAL

*/s/ Kyle J. Kaiser*
KYLE J. KAISER
ADAM D. WENTZ
Assistant Utah Attorneys General
*Counsel for State Defendants*

---

[18] Pl.'s Opp. at 27.
[19] Defs.' Mot. at 42–43.

## <u>WORD COUNT CERTIFICATION</u>

I certify that **STATE DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** contains 3972 words and complies with DUCivR 7-1(a)(4) as well as this Court's Order Granting State Defendants' Motion for Leave to File Overlength Reply Memo (doc. 24).

DATED: May 6, 2022

OFFICE OF THE UTAH ATTORNEY GENERAL


/s/ Kyle J Kaiser
KYLE J. KAISER
Assistant Utah Attorney General
Counsel for State Defendants

25