THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| DARRELL SMITH,<br><br>                Plaintiff,<br><br>v.<br><br>UTAH DEPARTMENT OF AGRICULTURE AND FOOD, SHANN FINLINSON, THANE MARSHALL, COREY CATTLE COMPANY, LLC, and MIKE COREY,<br><br>                Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING STATE DEFENDANTS' MOTION TO DISMISS**<br><br>Case No. 4:21-cv-00118-TC-PK<br><br>District Judge Tena Campbell<br><br>Magistrate Judge Paul Kohler |

This is a cattle-conversion suit. Plaintiff Darrell Smith alleges that negligent and intentional actions of the Utah Department of Agriculture and Food (UDAF), Shann Finlinson, Thane Marshall, Corey Cattle Company, LLC ("Corey Cattle"), and Mike Corey ("Mr. Corey") related to a cattle inspection and cattle transfer wrongly deprived him of a herd of valuable cattle. Before the court is a Motion to Dismiss brought by UDAF, Mr. Finlinson, and Mr. Marshall (collectively, "State Defendants").[1] They seek dismissal of the five causes of action Mr. Smith brings against them.[2] For the following reasons, the court grants the Motion to Dismiss.

## BACKGROUND

Mr. Smith is a rancher who raises cattle.[3] Between April 2017 and June 2019, he contracted with Corey Cattle to store 282 cattle at Corey Cattle's feed lot in Delta, Utah.[4] Some

---

[1] Mot. Dismiss, ECF No. 11.
[2] Mr. Smith brings 11 claims overall, but only five are brought against the State Defendants.
[3] Compl. ¶¶ 12–13, ECF No. 2-2. All factual allegations come from Mr. Smith's complaint. The court accepts them as true for purposes of this order. See Albers v. Bd. of Cnty. Comm'rs, 771 F.3d 697, 700 (10th Cir. 2014).
[4] Compl. ¶¶ 16–17, 26–38, 47, ECF No. 2-2.

of these 282 cattle bore Mr. Smith's brand, and some of the cattle were sent to Corey Cattle

directly after Mr. Smith purchased them, so they bore the brands of prior owners rather than Mr.

Smith's brand.[5]  Although Mr. Smith instructed Mr. Corey to rebrand the cattle that lacked Mr.

Smith's brand, Mr. Corey did not rebrand the cattle.[6]

On or about June 29, 2019, Mr. Corey/Corey Cattle authorized the release and transport

of approximately 900 head of cattle from the Delta feed lot out of the state of Utah—including

Mr. Smith's 282 cattle.[7]  Utah law required Corey Cattle to have a brand inspection conducted by

UDAF before the cattle could be moved across state lines.[8]  As part of the inspection, UDAF was

required to verify the ownership of inspected cattle based on their brand registrations.[9]

Mr. Finlinson is a livestock and brand inspector employed by the UDAF.[10]  On June 29,

2019, he conducted a brand inspection of 900 cattle at the Corey Cattle feed lot, including Mr.

Smith's 282 cattle.[11]  He observed the brands on Mr. Smith's 282 cattle while conducting his

inspection, but it is not clear if he verified the brands with the brand book, a database of brand

registrations.[12]  Particularly relevant to the inspection is that Mr. Corey misrepresented in brand

inspection certifications that he was an agent or owner of Titan Livestock (Titan) and that he had

authority to transport the 900 cattle.[13]  As part of the inspection, Mr. Finlinson signed and issued

brand inspection certificates for 900 cattle, including Smith's 282 cattle, that identify Titan as the

---

[5] Id. ¶¶ 26–38.
[6] Id. ¶¶ 33–34, 39–41.
[7] Id. ¶¶ 16, 47.
[8] Id. ¶ 49.
[9] Id. ¶ 50.
[10] Id. ¶ 3.
[11] Id. ¶¶ 3, 47, 51.
[12] Id. ¶¶ 50, 102.
[13] Id. ¶¶ 60, 63; Livestock Brand Inspection Certificates, Ex. A to Compl., ECF No. 2-2 at 33–41.

owner of the cattle.[14]  Neither Titan nor Corey Cattle were the owner of Smith's 282 cattle and

none of the brands on Smith's 282 cattle were registered to Titan or Corey Cattle.[15]  After the

brand inspection, Mr. Corey transferred the 900 cattle to Titan, including Mr. Smith's 282

cattle.[16]  Mr. Smith never authorized the sale, transfer, or transportation of his 282 cattle.[17]

After the unauthorized transfer, Mr. Smith visited Corey Cattle's feed lot to verify the

status of his cattle.[18]  Mr. Corey told Mr. Smith that he had sold Mr. Smith's 282 cattle and that

Mr. Smith would receive the net sale proceeds.[19]  However, in spring 2020, Mr. Corey admitted

that he had not sold Mr. Smith's 282 cattle, but he had instead released them to Titan.[20]

In March 2020, Mr. Smith met with Mr. Marshall, who was employed by the UDAF as a

brand inspector supervisor for southern Utah.[21]  Mr. Smith requested information about the

transfer of his 282 cattle.[22]  Mr. Marshall told Mr. Smith that he reviewed the records, that Corey

Cattle was the record owner of the 282 Cattle, and that there were no mistakes with Mr.

Finlinson's brand inspection.[23]

Mr. Smith filed a notice of claim letter with the UDAF and the Office of Attorney

General on April 5, 2021.[24]  Having received no response to his notice of claim, Mr. Smith filed

this case in Utah's Fourth Judicial District Court on November 8, 2021.[25]  In his Complaint, Mr.

---

[14] Compl., ¶¶ 52-53, 92(b); Livestock Brand Inspection Certificates at 33–41.
[15] Compl. ¶¶ 47, 53–57.
[16] Id. ¶¶ 47, 59.
[17] Id. ¶ 67.
[18] Id. ¶ 69.
[19] Id. ¶¶ 70–71.
[20] Id. ¶ 73.
[21] Id. ¶¶ 4, 74.
[22] Id.
[23] Id. ¶¶ 74–76.
[24] Id. ¶ 82.
[25] Id. ¶¶ 82–83.

Smith brings eleven claims against the State Defendants, Corey Cattle, and Mr. Corey.[26]  Against

the State Defendants, he brings five claims: negligence (claim one of the Complaint, brought

against the UDAF), willful misconduct (claim two, against Mr. Finlinson and Mr. Marshall),

unlawful seizure (claim nine, against Mr. Finlinson), conspiracy (claim ten, against Mr.

Finlinson), and substantive due process violations (claim eleven, against Mr. Finlinson).[27]  The

State Defendants removed the case to this court on December 2, 2021.[28]  Mr. Smith has since

voluntarily dismissed Mr. Corey from this case.[29]

On February 14, 2022, the State Defendants filed their motion to dismiss the five claims

Mr. Smith brings against them, under Federal Rule of Civil Procedure Rule 12(b)(6).[30]  On April

16, 2022, Mr. Smith filed his Memorandum in Opposition to the State Defendants' Motion to

Dismiss.[31]  On May 6, 2022, the State Defendants filed their Reply Memorandum in Support of

Motion to Dismiss.[32]  On August 17, 2022, the court heard argument on the motion to dismiss.[33]

## LEGAL STANDARDS

To withstand a Rule 12(b)(6) motion to dismiss, a party "must plead facts sufficient to

state a claim to relief that is plausible on its face."[34]  A claim is facially plausible "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."[35]  Although the court treats "all well-pled factual

---

[26] See id. ¶¶ 85–190.
[27] Id. ¶¶ 85–116, 169–90.
[28] Notice of Removal, ECF No. 2.
[29] Notice of Voluntary Dismissal of Mike Corey, ECF No. 13.
[30] Mot. Dismiss, ECF No. 11.
[31] Mem. Opp. Mot. Dismiss, ECF No. 17.
[32] Reply Supp. Mot. Dismiss, ECF No. 25.
[33] Minute Entry for Motion Hearing, ECF No. 28.
[34] Slater v. A.G. Edwards & Sons, Inc., 719 F.3d 1190, 1196 (10th Cir. 2013) (internal quotation marks and citation omitted).
[35] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

allegations as true and construes them in the light most favorable to the nonmoving party,"[36] this

rule does not apply to legal conclusions.[37]  "Mere 'labels and conclusions,' and 'a formulaic

recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific

factual allegations to support each claim."[38]

**ANALYSIS**

The State Defendants argue the five claims Mr. Smith brings claims against them should

be dismissed.  They argue his negligence claim should be dismissed because UDAF is shielded

by government immunity.  They argue his willful misconduct and conspiracy claims should be

dismissed as inadequately pled, and moreover, that "willful misconduct" is not a separate cause

of action and should consequently be dismissed.  Finally, they argue that Mr. Smith's fourth

amendment and substantive due process claims should be dismissed because they fail as a matter

of law.  The court addresses each claim in turn, and it dismisses each of these five claims.

**I.      Mr. Smith's Negligence Claim (Claim One) Is Barred By Government Immunity**

The State Defendants argue government immunity defeats Mr. Smith's negligence claim,

which he brings only against UDAF.[39]  In Utah, the Governmental Immunity Act of Utah

(UGIA)  establishes the boundaries of government immunity.[40]  Utah courts apply a three-part

test to determine if government immunity exists; they ask (1) was the activity in question a

government function; (2) was government immunity waived for the activity; and (3) is there an

exception to the waiver?[41]

---

[36] Strauss v. Angie's List, Inc., 951 F.3d 1263, 1267 (10th Cir. 2020).
[37] Iqbal, 556 U.S. at 678–79.
[38] Kansas Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).
[39] Mot. Dismiss 18–24, ECF No. 11; Compl. ¶¶ 85–97, ECF No. 2-2.
[40] Utah Code Ann. §§ 63G-7-101-904.
[41] Conner v. Dep't of Com., 2019 UT App 91, ¶ 17, 443 P.3d 1250, 1256.

The court agrees with the parties that the first two prongs of this test point to a waiver of government immunity. The alleged activities—including the brand inspection and issuance of the brand inspection certificates by Mr. Finlinson and Mr. Marshall, who are both UDAF employees—were government functions. And there is a general immunity waiver in the UGIA when alleged injuries are "proximately caused by a negligent act or omission committed within the scope of employment."[42]

The parties dispute whether an exception in the UGIA applies to the acts at issue, which would consequently preserve the state's immunity. The State Defendants argue immunity is retained because the UGIA's licensing, inspection, and misrepresentation exceptions apply.[43] Mr. Smith counters that these exceptions are narrowly construed and inapplicable here.[44]

Under the UGIA, immunity for governmental entities or their employees is not waived for injuries caused by the negligent acts or omissions of employees "if the injury arises out of or in connection with, or results from . . . a failure to make an inspection or making an inadequate or negligent inspection."[45] This is known as the inspection exception.

Mr. Smith's claim for negligence alleges that Mr. Finlinson breached his duties by failing to verify ownership of the cattle during the brand inspection, and in issuing inadequate and inaccurate brand inspection certificates; Mr. Smith also alleges that inaccurate comments made by Mr. Marshall about the inspection certificates were negligent.[46] Mr. Smith claims he is

---

[42] Utah Code Ann. § 63G-7-301; see also Mot. Dismiss at 17, ECF No. 11; Mem. Opp. Mot. Dismiss at 8–9, ECF No. 17.
[43] Mot. Dismiss at 18–24, ECF No. 11. Since the court dismisses Mr. Smith's negligence claim because it finds that the inspection exception applies and preserves the State Defendants' immunity, the court does not reach the issues of whether the licensing exception or the misrepresentation exception also apply to, or immunize, the State Defendants' conduct.
[44] Mem. Opp. Mot. Dismiss at 9–19, ECF No. 17.
[45] Utah Code Ann. § 63G-7-201.
[46] Compl. ¶¶ 92–97, ECF No. 2-2.

entitled to judgment against UDAF for Mr. Finlinson and Mr. Marshall's negligent acts and

omissions.[47]  All of Mr. Smith's allegations about the State Defendants either concern the

conduct of Mr. Finlinson during the inspection or are related to the conclusions of the inspection

recorded in the brand inspection certificates.  These acts are inextricably tied to Mr. Finlinson's

brand inspection—undoubtedly "aris[ing] out of or in connection with or result[ing] from" an

inspection.[48]  Based on the expansive language in the UGIA, the inspection exception preserves

the State Defendants immunity and bars Mr. Smith's negligence claim.

Mr. Smith alleges the inspection exception is applied narrowly and must be limited to

inspections for property or equipment, those inspections ensuring public safety, and inspections

for the public generally.[49]  But Mr. Smith's narrow interpretation is inconsistent with the broad,

unambiguous language of Utah Code § 63G-7-201, which does not include any limitation based

on the type or purpose of an inspection.[50]  While a predecessor statute did limit the exception to

an "inspection of any property,"[51] no such limitation remains in the current UGIA.[52]

The cases cited by Mr. Smith also do not persuade the court his position is correct.[53]

Their factual scenarios are distinguishable from the issues at hand, and the concerns the courts

raised in the cases Mr. Smith cites are absent here.  For example, Mr. Smith's injury was not a

---

[47] Id. ¶ 97.

[48] See Utah Code Ann. § 63G-7-201.

[49] Mem. Opp. Mot. Dismiss at 9–11, ECF No. 17.

[50] See Bryner v. Cardon Outreach, LLC, 2018 UT 52, ¶ 9, 428 P.3d 1096, 1099 ("where statutory language is plain and unambiguous, this Court will not look beyond the same to divine legislative intent." (internal citation omitted)).

[51] Ericksen v. Salt Lake City Corp., 858 P.2d 995, 997 (Utah 1993) (observing immunity not waived where injury "arises out of a failure to make an inspection or by reason of making an inadequate or negligent inspection of any property.").

[52] Utah Code § 63G-7-201.

[53] Mem. Opp. Mot. Dismiss at 9–11, ECF No. 17.

tangential injury caused by negligence during the inspection, such as causing a ladder to fall.[54]

And the inspection did not involve property owned by the government.[55]  Similarly, the

inspection at issue was not an informal or unregulated internal inspection for the benefit of the

government.[56]  Finally, none of Mr. Smith's cited cases attempt to limit inspections to real

property—they only identify building inspections as an area where inspection immunity "most

frequently" arises.[57]  Here, the UDAF inspection Mr. Finlinson conducted was an inspection of

private property that was required by statute, and the alleged injury was based on the results of

the inspection, not a tangential injury that occurred during the inspection.

In sum, the inspection exception applies here, and preserves the state's immunity.  This

bars Mr. Smith's negligence claim against the UDAF.  The court consequently dismisses Mr.

Smith's negligence claim with prejudice.

## II.   Mr. Smith's Willful Misconduct Claim (Claim Two) is Not a Separate Cause of Action and is Inadequately Pled

Mr. Smith's second claim for relief is for willful misconduct under Utah Code § 63G-7-

202(3)(c)(i).[58]  He brings it against Mr. Finlinson and Mr. Marshall.[59]  But Mr. Smith "fails to

state an independent legal basis for this cause of action."[60]  The UGIA establishes that an action

against a government entity is the exclusive remedy available for injuries caused by the

performance of a government employee's duties unless the employee acts through fraud or

willful misconduct.[61]  If fraud or willful misconduct is present, a party can bring an action

---

[54] Id.; Ericksen, 858 P.2d at 997.
[55] Nixon v. Salt Lake City Corp., 898 P.2d 265, 270 (Utah 1995).
[56] Ilott v. Univ. of Utah, 2000 UT App 286, ¶ 14, 12 P.3d 1011, 1014.
[57] Id. at ¶ 8, 12 P.3d at 1013.
[58] Compl. ¶¶ 98–116.
[59] Id.
[60] Scott v. Conley, No. 2:15-CV-00371, 2016 WL 4257507, at *8 (D. Utah July 18, 2016), R. and R. adopted, No. 2:15-CV-371, 2016 WL 4257339 (D. Utah Aug. 11, 2016).
[61] Utah Code Ann. § 63G-7-202(3).

against the employee.[62]   The UGIA, however, "is not a source of substantive rights."[63]   As a result, Mr. Smith's claim for willful misconduct is not a proper claim as a matter of law.[64]

Even if a cause of action for willful misconduct existed, the factual allegations in Mr. Smith's complaint insufficiently plead it.  "[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."[65]   Willful misconduct means the wrongful act was done intentionally and with an awareness that "the actor's conduct will probably result in injury."[66]   Other than conclusions that Mr. Finlinson and Mr. Marshall "willfully and knowingly" failed to carry out their duties,[67] Mr. Smith fails to allege any facts demonstrating that Mr. Finlinson or Mr. Marshall had actual knowledge of the wrongfulness of their behavior and the probability of injury to Mr. Smith.  Mr. Smith's claim for willful misconduct is dismissed with prejudice because it is not a proper cause of action and because it is inadequately pled.

### III.   Mr. Smith's Fourth Amendment Claim (Claim Nine) Fails as a Matter of Law

Mr. Smith's ninth claim, brought against Mr. Finlinson, is for unlawful seizure in violation of the Fourth Amendment.[68]   State employees are generally shielded from civil liability "when performing discretionary functions unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known."[69]   To survive

---

[62] Id.

[63] Scott, 2016 WL 4257507, at *8 (D. Utah July 18, 2016) (citing Utah Code Ann. § 63G-7-202(1)(c)) ("[n]o cause of action or basis of liability is created by any waiver of immunity in [the UGIA] . . . .").

[64] Id.; Webb v. Swensen, No. 1:14-CV-00148, 2016 WL 1122981, at *9 (D. Utah Feb. 23, 2016), R. & R. adopted, No. 1:14-CV-00148, 2016 WL 1122859 (D. Utah Mar. 22, 2016).

[65] Pingree v. Univ. of Utah, No. 22-CV-00724, 2022 WL 1307902, at *4 (D. Utah May 2, 2022).

[66] Miller v. Utah, 638 F. App'x 707, 716 (10th Cir. 2016).

[67] Compl. ¶¶ 98–114.

[68] Id. ¶¶ 169–77.

[69] RossI v. Univ. of Utah, No. 2:15-CV-00767, 2016 WL 3570620, at *2 (D. Utah June 24, 2016) (internal quotation marks and citation omitted).

a motion to dismiss, a complaint alleging a Fourth Amendment violation must sufficiently plead

that (1) "defendant's actions violated a constitutional or statutory right and (2) that the right was

clearly established at the time of the defendant's unlawful conduct."[70]  To show a right is clearly

established, the plaintiff must point to "a Supreme Court or Tenth Circuit decision on point, or

the clearly established weight of authority from other courts" supporting the law as the plaintiff

asserts.[71]

      Mr. Smith alleges Mr. Finlinson violated his Fourth Amendment rights when he

"interfered with and seized [Smith's] property without a warrant, investigative subpoena,

probable cause, reasonable suspicion, exigent circumstances or any other legal basis."[72]  But a

brand inspection of cattle, without more, is not a seizure under the Fourth Amendment.[73]

Additionally, and contrary to Mr. Smith's allegations, Mr. Finlinson was authorized by statute to

"enter premises where livestock are kept or maintained for the purpose of examining brands."[74]

Moreover, Mr. Smith's cattle were housed at a feed lot owned by Corey Cattle, and Mr. Corey

requested Mr. Finlinson perform the inspection.[75]

      While there are cases where government actors "cross the line" and "affirmatively

intervene to aid" a repossessor,[76] Mr. Smith has failed to allege facts in this case that show the

---

[70] Serna v. Colorado Dep't of Corr., 455 F.3d 1146, 1150 (10th Cir. 2006) (internal quotation marks and citation omitted).
[71] RossI, 2016 WL 3570620 at *5.
[72] Compl. ¶ 171, ECF No. 2-2.
[73] Stanko v. Maher, 419 F.3d 1107, 1115 (10th Cir. 2005) ("Under the circumstances presented, the brand inspection statutes authorized Mr. Maher to inspect the cattle. There was no Fourth Amendment violation. A warrantless search of cattle about to be transported outside the county was authorized by statute to protect the urgent state interest of preventing trafficking in lost or stolen cattle.").
[74] Utah Code Ann. § 4-24-504.
[75] Compl. ¶¶ 21, 26–51, ECF No. 2-2.
[76] See, e.g., Marcus v. McCollum, 394 F.3d 813, 818 (10th Cir. 2004).

type of active engagement in a repossession that would rise to a seizure.  Importantly, there are

no allegations of a repossession or dispute of ownership as in other cases finding violations.[77]

Consequently, Mr. Smith fails to allege sufficient facts of a constitutional violation.

      Even if Mr. Finlinson's brand inspection was a constitutional violation, it was not a

violation of clearly established law.  A "Government official's conduct violates clearly

established law when, at the time of the challenged conduct, the contours of a right are

sufficiently clear that every reasonable official would have understood that what he is doing

violates that right."[78]  There is no controlling authority establishing the rights Mr. Smith asserts

which would enable a reasonable brand inspector to understand that a defective brand inspection

violates the Fourth Amendment.  Mr. Smith's claim alleging Mr. Finlinson's violation of the

Fourth Amendment consequently fails as a matter of law and is dismissed with prejudice.

    **IV.**    **Mr. Smith's Conspiracy Claim (Claim Ten) is Inadequately Pled**

      A complaint for conspiracy must "allege specific facts showing an agreement and

concerted action amongst the defendants."[79]  Conclusions of conspiracy "are insufficient to state

a valid § 1983 claim."[80]  A complaint must include "factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."[81]

Circumstantial evidence of a conspiracy could include "the nature of the act done, the relations

of the parties, and the interests of the alleged conspirators."[82]

      Mr. Smith's complaint fails to allege specific factual details that plausibly show a

conspiracy.  Rather, his allegations rely on conclusory statements, speculation, and unreasonable

---

[77] Id.

[78] Ashcroft v. al-Kidd, 563 U.S. 731 (2011) (cleaned up).

[79] Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 533 (10th Cir. 1998) (citation omitted).

[80] Id.

[81] Iqbal, 556 U.S. at 678.

[82] Israel Pagan Est. v. Cannon, 746 P.2d 785, 791 (Utah Ct. App. 1987).

inference.  Mr. Smith points to the allegations of a deficient brand inspection as evidence of the

conspiracy including the certificates being filled out incorrectly, incorrectly listing Titan as the

owner, and the failure by Mr. Finlinson to demand evidence of ownership or to contact Mr.

Smith or the cattle's prior owner.[83]  However, other than Mr. Smith's conclusions that there was

an agreement to violate his rights, and that both Mr. Finlinson and Mr. Corey knew of the cattle's

true ownership, Mr. Smith fails to allege facts that lead to the reasonable inference that Mr.

Corey and Mr. Finlinson entered a conspiracy.  Mr. Smith's claim for conspiracy is dismissed

without prejudice.

> **V.   Mr. Smith's Substantive Due Process Claim (Claim Eleven) Fails as a Matter of Law**

To state a substantive due process claim under § 1983 where, as here, the allegations do

not involve a claim that the government has infringed a "fundamental" right,[84] the allegations

made in the complaint "must do more than show that the government actor intentionally or

recklessly caused injury to the plaintiff by abusing or misusing government power.  [They] must

demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly

conscience shocking."[85]  Mr. Smith's allegations fall well short of the "conscience shocking"

level required to bring a substantive due process claim.[86]  Consequently, his substantive due

process claim is dismissed with prejudice.

---

[83] Compl. ¶¶ 179–82, ECF No. 2-2.

[84] Doe v. Woodard, 912 F.3d 1278, 1300 (10th Cir. 2019) (contrasting "fundamental" right infringement claims with "claims that government action deprived a person of life, liberty, or property in a manner so arbitrary it shocks the judicial conscience."); Dobbs v. Jackson Women's Health Org., 142 S. Ct. 2228, 2246 (2022) (discussing "select list of fundamental rights"); see also Mem. Opp. Mot. Dismiss at 31, ECF No. 17 (arguing actions at issue shock the conscience, but not that a "fundamental right" infringement has occurred).

[85] Williams v. Berney, 519 F.3d 1216, 1221 (10th Cir. 2008) (cleaned up).

[86] See Woodard, 912 F.3d at 1300 (citing Rochin v. California, 342 U.S. 165, 172 (1952); T.D. v. Patton, 868 F.3d 1209, 1213 (10th Cir. 2017)) (observing Supreme Court found conscience-

**ORDER**

For the reasons above, the court ORDERS that the State Defendants' Motion to Dismiss is

GRANTED.[87]  Mr. Smith's claims for negligence (claim one), willful misconduct (claim two),

violation of the Fourth Amendment (claim nine), and substantive due process (claim eleven) are

dismissed with prejudice.  Mr. Smith's claim for conspiracy (claim ten) is dismissed without

prejudice.

DATED March 23, 2023.

BY THE COURT

Tena Campbell

_____
Tena Campbell
United States District Judge

---

shocking behavior in sheriff's application of stomach pumping to force vomiting and Tenth
Circuit found it in social worker's actions that led to physical and sexual abuse of a minor).
[87] Mot. Dismiss, ECF No. 11.